Myles J. Lane, J.
This proceeding is regarded in substance as an action for declaratory judgment of unconstitutionality (see 34 A D 2d 779).
Remand was ordered by the Appellate Division in order to add what it deemed ‘1 indispensable parties to the litigation ” as parties defendant. Presumably, pursuant to the order of the Appellate Division, petitioners have filed a copy of the notice of this remanded proceeding, together with postal return receipts indicating receipt of the notice by the affected parties. It is contended by the Attorney-General that the letter notice is legally insufficient and that the number of individuals served was far shorter than that ordered by the Appellate Division.
It is noted that, by the decision of the Appellate Division and the accompanying order, only “ incumbent candidates for the positions sought by the petitioners ” [emphasis supplied] were directed to be added as parties, but not all incumbents affected by the legislation under review. Moreover, all that the decision and order of the Appellate Division required was that notices be sent to each such incumbent by registered special-delivery mail with return receipts to be filed on June 4,1970. Petitioners have demonstrated compliance with these directions. The letter sent to the added parties affords them adequate notice of this action, the proceedings heretofore had, the action taken by the Appellate Division, and their standing in the litigation. Accordingly, the notice is held to be procedurally sufficient. An objection similar to that raised by the Attorney-General was raised by a representative of Congressman Adam Clayton Powell. Since none of the petitioners seek to unseat Mr, Powell, he does not come within the ambit of the notice requirements of the Appellate Division.
Within the confines of the order of the Appellate Division, the factual issues raised by the pleadings in this matter, particularly the question as to whether there is an advantage for a candidate for elective office to have his name placed first on the ballot, was referred to a Special Referee of this court. After hearing held, the Referee has reported that on the basis of the testimony and evidence before him, there is such an advantage. The report of the Referee is hereby confirmed and his findings adopted.
*1022 The legislation under attack is an amendment to section 242-a of the Election Law and generally provides that in the use of voting machines for'primary elections in the City of New York, “ whenever a candidate * * * is also the incumbent * * ® his name shall be printed first * * * on the official primary ballot, and the order of the names of the remaining candidates # * * shall be determined by lot ” .(L. 1970, ch. 196). The enactment applies only to the primary elections to be held in the year 1970. Heretofore, the positions of all candidates in primary elections were determined by lot.
It is contended by the petitioners that, aside from other claimed defects the enactment was violative of section 17 of article IIÍ of the New York State Constitution, which bars the Legislature from passing a private or local bill concerning the opening and conducting of elections or designated places of voting. The apparent purpose of this constitutional enactment was to prevent legislative interference with purely local questions Matter of Burns (155 N. Y. 23, 30-31).
The bill here in question applies to an election which is general in nature and is of concern to the entire State. Its applicability to voting machines in the City of New York does not make it, per se, a local or private bill, so as to prevent the Legislature from fulfilling its functions to insure the conduct of orderly elections within the State. Accordingly, petitioners’ contention in this regard is without basis.
Petitioners’ major argument is that the legislation is unconstitutional because it denies to nonincumbent candidates the equal protection of the laws under Federal and State constitutions. It is well settled that: “ Constitutional provisions are specific and largely exclusive in regard to the qualifications of voters, but they are necessarily general in prescribing the way in which the voting shall be done, this being left almost wholly to statutory direction, ancLso/the legislature has the power to establish all reasonable regulations of the right of franchise, and may control and regulate the ballot so long as the right is not destroyed or made so inconvenient that it is impossible to enjoy it. Where such regulations are imposed for the purpose of guarding against fraud, undue influence, and oppression, and of maintaining the secrecy of the ballot, they are clearly within the legislative power. The courts are inclined to take a liberal view of legislative authority in the matter, particularly where the law is passed for the purpose of securing the purity of the ballot, and all doubts will be resolved in favor of that authority. Laws so designed will not be declared invalid merely because their enforcement may result in the restriction of the right to *1023 vote, although if the legislature destroy or unnecessarily impair the right of suffrage, its acts cannot be upheld.” (9 R. C. L. 1046.)
It was noted by the Court of Appeals in Matter of Crane v. Voorhis (257 N. Y. 298, 301-302) that: “ The underlying principle regarding the franchise and the inviolable rights of an elector under the State Constitution was stated [in Matter of Callaghan v. Voorhis, 252 N. Y. 14, 17-18] in these words: 1 The whole purpose of the Election Law and of the Constitution under which it is enacted, is that, within reasonable bounds and regulations, all voters shall, so far as the law provides, have equal, easy and unrestricted opportunities to declare their choice for each office. Section 249 of the Election Law is constitutional except in those instances when to apply it would be unfair and prejudicial to a particular class of voters.’
‘ ‘ What would be unreasonable and unfair to the voter is a question of fact depending upon the circumstances of each case. It is a judicial question and not a matter for arbitrary legislation. ’ ’
It was found herein as a matter of fact that there is a distinct advantage to the candidate whose name appears first on a ballot. Aside from the factual determination, such a belief appears to be so widespread and so universally accepted as to make it almost a matter of public knowledge. Position advantage was tacitly noted by the court in Matter of Curran [Aurelio] (266 App. Div. 609, affd. 291 N. Y. 682), where it was held that the order of names should not be changed for the purpose of giving one candidate or group of candidates an advantage.
A situation analogous to the one at bar appeared last year in the State of Illinois. There the Secretary of State placed candidates on the ballots on the basis of his own preference and seemed to have favored candidates indorsed by regular party organizations. The United States Court of Appeals for the 7th Circuit struck down this procedure, on the finding that it was “ adequately established that top position on the ballot is one of a number of factors which tend to affect the outcome of 'an election, and which may have a substantial effect although degree varies with the circumstances.” (Weisberg v. Powell, 417 F. 2d 388, 392.) It was also held in that case that where discrimination is sufficiently established, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights, citing Snowden v. Hughes (321 U. S. 1, 11). After the decision in the Weisberg case (supra), the Illinois Legislature amended that State’s election law and, presumably acting in accordance with *1024 State’s election law and, presumably acting in accordance with the powers afforded him by that amendment, the Secretary of State continued to break ties for ballot position on the basis of favoring “ incumbents ” and those with “ seniority.” This was again barred by a Federal ‘ ‘ constitutional court ’ ’ as being a purposeful and unlawful evasion of the plaintiff’s ‘ ‘ Fourteenth Amendment right to fair and even-handed treatment ’ ’ (Mann v. Powell, U. S. Dist. Ct., N. D., Ill., affd. 398 U. S. 955).
While it is not the function of a court to inquire into legislative motive in the pursuit of legislative functions, it is incumbent upon courts to prevent the exercise of such function where, contrary to its avowed purposes, a legislative enactment unlawfully impinges upon basic and inviolable rights. The purpose of the legislative bill as expressed in its title is “ To amend the election law, in relation to ‘ challenge ’ at primary elections in New York 'City.” The language of the title and the operative portion of the bill are so disparate as to raise the possibility of invalidity on this basis alone should this be found to be a private or local bill. Section 15 of article III of the State Constitution mandates that the subject of such bill be expressed in the title. The amendment here in question seeks to supplant a method of placing names on the ballot based upon competition among candidates with presumably equal footing with a method, insuring to an incumbent or incumbents an irrefutably favorable spot, preserving for only the remaining candidates the competition heretofore required for all.
The court finds no rational basis for affording’ such favoritism to a candidate merely on the basis of his having been successful at a prior election. The argument that perhaps the electors in confronting the ballot are entitled to know who the incumbent for the position in question might be is not persuasive. Aside from the ballot position, nowhere would this information appear on the ballot, and it would take an ultrasophisticated electorate extremely knowledgeable in election procedures to ascertain that the top position is that of the present incumbent.
Adherence to the rule enunciated by this statute might on the contrary lead to confusion, since the electorate might suppose ~ that each candidate whose name appears first on the ballot for a given position is an incumbent, even though there may be no incumbent.
The odium of the legislation is further enhanced by its restriction solely to the City of New York and only to the primary election to be held this year. There being no rational basis for these restrictions, the court finds that even if one would other *1025 wise assume the constitutionality of the amendment, the legislation in its present form is violative of basic constitutional principles. The legislation is therefore declared constitutionally invalid, and respondent Board of Elections is directed to determine ballot positions by lot as heretofore.