[L.A. No. 30411. In Bank. July 7, 1975.]

RENEE V. GOULD et al., Plaintiffs and Respondents, v.
KENNETH O. GRUBB, as City Clerk, etc., Defendant and Appellant;
ROBERT M. "BOB" GABRIEL et al., Real Parties in Interest and
Appellants.

COUNSEL

Richard L. Knickerbocker, City Attorney, and Rosario Perry, Deputy City Attorney, for Defendant and Appellant and for Real Parties in Interest and Appellants.

Roger Jon Diamond and Hecht, Diamond & Freis for Plaintiffs and Respondents.

## OPINION

**TOBRINER, J.**—In this case we must determine the constitutionality of an election procedure which automatically affords an incumbent, seeking reelection, a top position on the election ballot. After a full evidentiary presentation at trial, the superior court found that a significant advantage accrues to a candidate by virtue of a top ballot position; in light of this advantage, the court concluded that it was constitutionally impermissible to reserve such positions for incumbents. The court accordingly struck down a Santa Monica Charter provision embodying such a procedure. The city[1] appeals from the adverse judgment, claiming first that the trial court's factual finding is not supported by substantial evidence, and second that, in any event, the "incumbent first" procedure is not unconstitutional.

■ For the reasons discussed below, we have concluded that the superior court decision should be affirmed. As we point out initially, the superior court's finding that placement in a top ballot position affords a candidate a substantial advantage over lower-placed candidates is supported by abundant expert testimony introduced at trial and is consistent with parallel findings rendered in similar litigation throughout the country. In light of this finding, we explain that any procedure which allocates such advantageous positions to a particular class of candidates inevitably discriminates against voters supporting all other candidates, and accordingly can only be sustained if necessary to further a compelling governmental interest. Applying this test, we conclude that the city has demonstrated no compelling interest which necessitates the provision's discriminatory classification scheme and thus we uphold the trial court's determination of invalidity. Finally, with respect to a subsidiary matter, we conclude that the allocation of advantageous ballot positions on the basis of "alphabetical order" is similarly unconstitutional.

The question of the constitutionality of an "incumbent first" election ballot procedure first came before this court two years ago in *Mexican-American Political Association* v. *Brown* (1973) 8 Cal.3d 733 [106 Cal.Rptr. 12, 505 P.2d 204] (hereafter *MAPA*) and *Diamond* v. *Allison* (1973) 8 Cal.3d 736 [106 Cal.Rptr. 13, 505 P.2d 205].[2] The petitioners in

---

[1]Although the appellants are technically the city clerk and the four incumbent city councilmen seeking re-election, for convenience and clarity this opinion refers to the city as the appellant in this matter.

[2]In *Salinger* v. *Jordan* (1964) 61 Cal.2d 824 [40 Cal.Rptr. 361, 395 P.2d 49], our court issued a writ of mandate compelling the Secretary of State to comply with applicable

*MAPA* and *Diamond* had initiated original proceedings in this court, challenging the constitutionality of state and local procedures which granted top ballot positions to incumbents. The petitions in both cases alleged that a substantial preference flowed to a candidate whose name was listed first on the ballot, and on the basis of these allegations we initially granted alternative writs of mandate. The returns to the petition, however, denied the existence, as a factual matter, of any benefit as a result of ballot position, and after oral argument a majority of this court concluded that the existence or nonexistence of the alleged "ballot position" advantage was "not a fact properly the subject of judicial notice." (8 Cal.3d at p. 734; *id.* at p. 737.)

In light of the disputed nature of the factual question, which the majority determined could more appropriately be resolved after trial at the superior court level, our court denied the requested writs of mandate. In each case, however, our decision specifically noted that the order of denial was "without prejudice to any subsequent proceedings which may be initiated in the superior court." (8 Cal.3d at p. 734; *id.* at pp. 737-738.)

The present mandamus action was commenced in the Los Angeles Superior Court the following month. Brought by Renee V. Gould and Richard J. Palmer, nonincumbent candidates in the then upcoming Santa Monica City Council election, the suit challenged the constitutionality of the governing Santa Monica Charter provision which, by adopting the state election procedures then in effect, provided priority ballot listing for incumbents.[3]

---

legislative provisions under which Salinger was entitled to be designated as United States Senator and listed first on the ballot. Our decision in *Salinger* rested solely on a question of statutory interpretation; the constitutional validity of the "incumbent first" procedure was neither raised by the parties nor discussed in the opinion. Neither party in the instant matter contends that the *Salinger* decision bears upon the issue presently before this court.

[3]At the time this suit was instituted article XIV, section 1403 of the Charter of the City of Santa Monica provided in relevant part: "Unless otherwise provided by ordinance . . . all elections shall be held in accordance with the provisions of the Elections Code of the State of California, as the same now exist or may hereafter be amended, for the holding of elections in cities of the sixth class . . . ." Santa Monica had enacted no other election ordinance and thus, pursuant to the above provision, section 22870 of the Elections Code governed the conduct of the election in question. Section 22870 provided in relevant part that in municipal elections "[t]he name of the incumbent shall appear first upon the list of all candidates for any office, and if two or more positions are to be filled at the same time and more than one incumbent is running, the name of each of the incumbents shall appear in alphabetical order followed by the names of all other candidates printed on the ballot in alphabetical order."

After the trial court sustained a demurrer to an initial pleading which had sought an order requiring the listing of candidates in alphabetical order, petitioners filed an amended petition alleging that the respondent election officials bore a constitutional duty to prepare ballots "in a manner determined by rotation, lottery or some other constitutional process free from arbitrary preference." The amended petition requested that the court order the local election officials to print the ballots "on a rotational basis," or, if this remedy were not possible, to order the officials to list the candidates on the ballot in a sequence determined by lottery.

Following a four-day trial at which both parties introduced considerable expert testimony on the question of whether or not a candidate gained any significant advantage by virtue of a top ballot position, the trial court rendered a formal finding that such "ballot positional" advantage did in fact exist, both "in general, and also with respect to the April 10, 1973, election" for the Santa Monica City Council.[4] Concluding that the city had demonstrated neither a "rational basis" nor any "compelling state or city interest" to justify the priority placement granted to incumbents, the court held that the ballot procedure at issue violated the equal protection clauses of both the state and federal Constitutions. Finally, having determined that the reprinting of the ballots pursuant to a rotation method could not be completed in time for the election, the court issued a peremptory writ directing the appropriate officials to reprint the sample and official ballots with the candidates' listing to be determined by lot. ■■■■■ The city appeals from this order.[5]

---

[4]Four positions on the city council were at stake in the April 10, 1973, election. The pertinent finding reads in full: "The first four positions on the ballot in Santa Monica are advantageous vis-a-vis the other positions because the persons whose names occupy such positions receive additional votes which they would not otherwise receive if they occupied other positions. This is true in general, and also with respect to the April 10, 1973, election for the City Council of the City of Santa Monica."

[5]We note preliminarily that neither party to the instant proceeding contends that this matter should be dismissed as moot: we agree with that position. First, it is clear, of course, that the mere fact that the specific city council election in question has taken place does not preclude our consideration of the general, recurrent legal questions raised in this litigation. On numerous occasions in recent years, we have decided such recurrent election issues although the particular election initially in question had long been completed. (See, e.g., Knoll v. Davidson (1974) 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273]; Zeilenga v. Nelson (1971) 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578]; see also, Moore v. Ogilvie (1969) 394 U.S. 814, 816 [23 L.Ed.2d 1, 4-5, 89 S.Ct. 1493].)

Second, although during the pendency of this appeal the City of Santa Monica enacted a new ordinance which complies with the trial court ruling, the city attorney has represented that the new enactment was adopted only to insulate interim local elections

As noted above, the city initially contends that the trial court's finding that the top positions on an election ballot "are advantageous vis-a-vis the other positions" is not supported by substantial evidence. Although the city concedes that petitioners introduced abundant testimony by scholars who had conducted extensive empirical studies on the matter in question,[6] the city maintains that petitioners' showing was flawed in two basic respects. First, the city contends that because none of the petitioners' expert witnesses had conducted studies on previous *Santa Monica* elections, their testimony did not support the trial court's conclusion that the advantage of ballot position would be a factor in the coming Santa Monica election. Second, the city argues that petitioners' expert testimony established at most only that a ballot position preference pertains to "low visibility" elections and that no competent evidence demonstrated that the forthcoming city council election fell into such a category.

Neither of the city's objections can prevail. In the first place, although none of the petitioners' witnesses had conducted statistical studies on past Santa Monica elections,[7] nothing in the record suggests that Santa

---

from subsequent attack and does not constitute an abandonment by the city of its contention that the "incumbent first" and "alphabetical order" listing procedures are constitutional. In *Bullock* v. *Carter* (1972) 405 U.S. 134, 141-142, footnote 17 [31 L.Ed.2d 92, 98-99, 92 S.Ct. 849], the United States Supreme Court found that a similar Texas statute, enacted to protect the election process during the pendency of the state's appeal, did not moot the appeal; although the new ordinance in the case at bar is not identical to the temporary Texas legislation involved in *Bullock*, we believe that in light of the practicalities of the situation, it would be unfair to treat adoption of the present local ordinance as in effect an abandonment of the city's appeal.

Finally, although the state statutes providing preferential ballot position to incumbents have been repealed during the pendency of this appeal (see Gov. Code, § 89000), the repeal does not directly apply to Santa Monica or other charter cities in California (see, e.g., *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 820-822 [86 Cal.Rptr. 268]). Thus, at the present time, such charter cities remain free to apply "incumbent first" election procedures. Moreover, the newly enacted Government Code provision leaves both state and local "alphabetical order" ballot procedures intact.

[6]Petitioners' expert witnesses included Henry M. Bain and William James Scott, Jr., authors of two of the leading published studies on the question of "ballot placement preference." (See Bain & Hecock, Ballot Position and Voter's Choice (1957); Scott, *California Ballot Position Statutes: An Unconstitutional Advantage to Incumbents* (1972) 45 So.Cal.L.Rev. 365.)

[7]Petitioners' experts explained why no statistical studies had been conducted on past Santa Monica elections. The witnesses testified that in undertaking their studies, they had chosen jurisdictions which employed a system of ballot rotation, that is where each of the candidates is listed in a different position on the ballot on an equal percentage of the total ballots cast; thus, for example, if there are three candidates, each candidate appears in the top position on one-third of the ballots, each appears in the middle position on one-third of the ballots, etc. The rotational system permitted the experts to compare how each candidate did when he appeared in different positions on the ballot, thus giving the

Monica voters differ significantly from the voters who participated in the numerous elections that were studied; certainly in the absence of any evidence to the contrary, the trial court could properly infer that the experts' general findings applied to Santa Monica elections. Second, the record does not support the city's characterization of petitioners' evidence as demonstrating that "ballot placement preference" occurs only in "low visibility" elections. Although most of the witnesses did testify that the advantage to a top ballot position was most pronounced in so-called "low visibility" races, in which voters are more likely to be unfamiliar with many of the candidates, several of the experts testified that a significant advantage as to ballot placement accrued to the beneficiaries in virtually all elections, with the possible exception of elections for the President of the United States or perhaps a state governor.

Taken as a whole, the present record supports the trial court's finding that "ballot position preference" is a factor in the municipal elections governed by the Santa Monica election procedure. Indeed, the evidence presented in the instant case was considerably stronger and more complete than that adduced in prior cases which have also found a "ballot position advantage." (See, e.g., *Weisberg* v. *Powell* (7th Cir. 1969) 417 F.2d 388, 392-393; *Matter of Holtzman* v. *Power* (1970) 62 Misc.2d 1020, 1023 [313 N.Y.S.2d 904], affd. 27 N.Y.2d 628 [313 N.Y.S.2d 760, 261 N.E.2d 666].)[8]

The city contends, however, that even if a significant advantage does accrue to a candidate by virtue of a top ballot position, such ballot position may nonetheless be reserved for incumbents seeking reelection. The city emphasizes that the state and charter cities have traditionally exercised broad authority in regulating the mechanics of election procedures and contends that the question of the placement of candi-

examiners a means of isolating the effect of a top ballot placement. Because Santa Monica had never used a rotational system for local elections, the experts concluded that a study of past local elections was not likely to produce useful data.

[8]Moreover, the existence of a "ballot position advantage" has been implicitly recognized by the California Legislature, by virtue of the numerous statutory provisions calling for the rotation of nonincumbent candidates on the ballots in various state elections. (See, e.g., Elec. Code, §§ 10202, 10203.) As other courts have recognized, such rotational provisions can only be explained as attempts "to afford . . . candidates equal chance to benefit from the indifference of careless voters who have no personal choice but who mark the first name. The legislature must have deemed [ballot] position of real advantage . . . ." (*Groesbeck* v. *Board of State Canvassers* (1930) 251 Mich. 286, 297 [232 N.W. 387].) "No other reason exists for the statute except that otherwise there would result disadvantage to some candidates." (*Kautenburger* v. *Jackson* (1958) 85 Ariz. 128 [333 P.2d 293, 295.])

dates' names on a ballot is a matter which should be left largely to the judgment of legislators and election officials.

■ We recognize, of course, that legislative bodies retain considerable discretion in formulating election procedures and devising regulations for the form and content of ballots. (See, e.g., *New York State Democratic Party* v. *Lomenzo* (2d Cir. 1972) 460 F.2d 250, 251.) As in all other areas of governmental action, however, the exercise of such discretion remains subject to constitutional limitations. (See *Anderson* v. *Martin* (1964) 375 U.S. 399 [11 L.Ed.2d 430, 84 S.Ct. 454] (state statute requiring designation of candidate's race on ballot held unconstitutional).) As the United States Supreme Court declared in *Moore* v. *Ogilvie* (1969) 394 U.S. 814, 818 [23 L.Ed.2d 1, 6, 89 S.Ct. 1493]: "*All* procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgement of the right to vote." (Italics added.)

The "incumbent first" ballot provision at issue here establishes two classifications of candidates for public office: incumbents seeking reelection and nonincumbent candidates. The salient constitutional issue, of course, is whether by according disparate treatment to these two classes of candidates, the city has denied nonincumbent candidates, or their supporters, the equal protection of the law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7(a).)[9]

■ As our numerous recent decisions establish, a court must determine at the threshold of any "equal protection" analysis the "level of scrutiny" or "standard of review" which is appropriate to the case at hand. (See, e.g., *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224]; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578-579 and fn. 25

[9]The city asserts that because its ballot placement procedure does not cause or encourage voters to cast their ballots haphazardly, it cannot be held constitutionally responsible for any resulting inequality in the voting procedure. This argument simply misconceives the nature of the equal protection guarantee. The ballot placement provision at issue, adopted by the city, clearly accords disparate treatment to incumbents and nonincumbents; in light of the trial court's finding that a substantial advantage adheres in top ballot positions, the unquestionable effect of the city's consciously selected ballot arrangement is to bestow a substantial advantage on incumbents vis-a-vis nonincumbents. It is the unequal effect flowing from the city's decision to reserve the top ballot position for incumbents that gives rise to the equal protection issue in question in this case. (Cf. *Riddell* v. *National Democratic Party* (5th Cir. 1975) 508 F.2d 770.)

[79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R. 3d 1194].) ■ The classification scheme at issue here directly relates to the electoral process, and in recent years both this court and the United States Supreme Court have had frequent occasion to reiterate that the "fundamental" nature of the right to vote and the importance of preserving the integrity of the franchise require that the judiciary give close scrutiny to laws imposing unequal burdens or granting unequal advantages in this realm. (See, e.g., *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 345 [116 Cal.Rptr. 97, 525 P.2d 1273]; *Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 98-106 [107 Cal.Rptr. 20, 507 P.2d 628]; *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951-955 [104 Cal.Rptr. 297, 501 P.2d 537]; *Dunn* v. *Blumstein* (1972) 405 U.S. 330, 336 [31 L.Ed.2d 274, 280, 92 S.Ct. 995]; *Kramer* v. *Union School District* (1969) 395 U.S. 621, 626 [23 L.Ed.2d 583, 588-589, 89 S.Ct. 1886]; *Reynolds* v. *Sims* (1964) 377 U.S. 533, 562 [12 L.Ed.2d 506, 527, 84 S.Ct. 1362].) To be sure, not every classification established by an "election law" need be subjected to this "strict" judicial scrutiny; innumerable election provisions detailing the mechanisms of the election process may have only minimal, if any, effect on the fundamental right to vote, and classifications of this nature may properly be judged under the "rational basis" equal protection standard. (See *McDonald* v. *Board of Election* (1969) 394 U.S. 802, 806-809 [22 L.Ed.2d 739, 744-746, 89 S.Ct. 1404]; cf. *Bullock* v. *Carter* (1971) 405 U.S. 134, 142-143 [31 L.Ed.2d 92, 99-100, 92 S.Ct. 849].)

The provision at issue in this case, however, cannot properly be placed in this latter category because its classification scheme imposes a very "real and appreciable impact" on the equality, fairness and integrity of the electoral process. (See *Bullock* v. *Carter, supra,* 405 U.S. 134, 143 [31 L.Ed.2d 92, 99-100].) In light of the trial court's finding that candidates in the top ballot position receive a substantial number of votes simply by virtue of their ballot position, a statute, ordinance or election practice which reserves such an advantage for a particular class of candidates inevitably dilutes the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class. (See Scott, *California Ballot Position Statutes: An Unconstitutional Advantage to Incumbents* (1972) 45 So.Cal.L.Rev. 365, 383-386.) Indeed, in a close race it is quite possible that a candidate with fewer "conscious" supporters than an opponent will actually win an election simply because his high position on the ballot affords him the advantage of receiving the vote of unconcerned or uninformed voters. (*Id.* at p. 376.) In such an instance, the challenged provision effectively undermines the fundamental democratic electoral tenet of majority rule.

Over a decade ago in *Gray* v. *Sanders* (1963) 372 U.S. 368 [9 L.Ed.2d 821, 83 S.Ct. 801]—one of the earliest reapportionment decisions—the United States Supreme Court explained the impropriety of an electoral scheme which substantially dilutes the weight of any segment of the voting populace. In *Gray* Justice Douglas wrote: "[A]ll who participate in [an] election are to have an equal vote. . . . The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications. The idea that every voter is equal to every other voter . . . when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions." (372 U.S. at pp. 379-380 [9 L.Ed.2d at pp. 829-830].)[10] This basic principle was reemphasized the following year by Chief Justice Warren in *Reynolds* v. *Sims, supra,* 377 U.S. 533, 555 [12 L.Ed.2d 506, 523-524]: "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." More recent cases have not drawn back from the fundamental premise that "the Equal Protection Clause confers the substantive right to participate *on an equal basis* with other qualified voters. . . ." (Italics added.) *(San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 59, fn. 2 [36 L.Ed.2d 16, 58, 93 S.Ct. 1278] (Stewart, J. concurring).)[11]

---

[10]Indeed. Justice Douglas had articulated this fundamental constitutional principle a decade and a half before the reapportionment decisions: "There is more to the right to vote than the right to mark a piece of paper and drop it in a box or a right to pull a lever in a voting booth. . . . It also includes the right to have the vote counted at full value without dilution or discount." *(South* v. *Peters* (1950) 339 U.S. 276, 279 [94 L.Ed. 834, 838, 70 S.Ct. 641] (dissenting opn.).)

[11]Although several recent United States Supreme Court decisions indicate an inclination to permit some deviation from "strict mathematical equality" in state legislative reapportionment schemes. the cases continue to reaffirm the principle that districts should be " 'as nearly of equal population as is practicable.' " (See, e.g., *Chapman* v. *Meier* (1975) 420 U.S. 1, 22 [42 L.Ed.2d 766, 781, 95 S.Ct. 751] (quoting *Reynolds* v. *Sims, supra,* 377 U.S. 533, 577 [12 L.Ed.2d 506, 536]); *Gaffney* v. *Cummings* (1973) 412 U.S. 735, 742 [37 L.Ed.2d 298, 305, 93 S.Ct. 2321].) Noting that the census data on which reapportionment plans are based are not precisely accurate and are quickly outdated. the recent decisions hold that "relatively minor" disparities in the size of state legislative districts do not amount to "invidious discrimination" violative of the equal protection clause. (See *Gaffney* v. *Cummings, supra,* 412 U.S. at pp. 745-751 [37 L.Ed.2d at pp. 307-311]; *White* v. *Regester* (1973) 412 U.S. 755, 764 [37 L.Ed.2d 314, 323, 93 S.Ct. 2332].) In reaching this conclusion. the court has emphasized the importance of permitting the state's legislative bodies to make the inevitable political judgments involved in drafting a reapportionment scheme, and has suggested that a strict mathematical equality formula would entail undue judicial intervention in the field. (See *Gaffney* v. *Cummings, supra,* 412 U.S. at pp. 749-751 [37 L.Ed.2d at pp. 309-311].)

Contrary to the city's contention, however, these recent reapportionment decisions do not purport to sanction a state electoral scheme which grants a substantial advantage to the supporters of one class of candidates at the expense of voters favoring other qualified

■ In light of these decisions, we think that the instant classification scheme, which substantially dilutes the weight of votes of those supporting nonincumbent candidates, must be subjected to "strict judicial scrutiny." (See *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942, 952-955; *Riddell* v. *National Democratic Party, supra,* 508 F.2d 770, 776-779; cf. *American Party of Texas* v. *White* (1974) 415 U.S. 767, 794-795 [39 L.Ed.2d 744, 767-768, 94 S.Ct. 1296]; *Bullock* v. *Carter, supra,* 405 U.S. 134, 144 [31 L.Ed.2d 92, 100].)[12] Under this standard, the charter provision can be upheld only if the government can demonstrate that the classifications drawn are *necessary* to achieve a *compelling* governmental interest. (See, e.g., *Thompson* v. *Mellon, supra,* 9 Cal.3d 96, 102; *Dunn* v. *Blumstein, supra,* 405 U.S. 330, 342 [31 L.Ed.2d 274, 284].)

The only justification which the city has proffered in support of the "incumbent first" ballot procedure falls far short of the mark. The city contends that in placing all incumbents on the top of the ballot, the election provision facilitates efficient, unconfused voting; in this regard, the city asserts that in most elections the principal decision for most voters is deciding whether to vote for or against the incumbent and the placement of the incumbent's name at the head of the ballot permits the voters to isolate this candidate quickly and without confusion.

Even if the city's view of the general voting process is an accurate one, however, there surely are alternative means of identifying incumbent candidates on the ballot which avoid the considerable discrimination against voters for nonincumbents inherent in the present positional priority procedure. The most obvious alternative is the simple expedient of permitting a candidate to designate himself as the incumbent on the ballot; such designation, of course, is presently authorized by state law

candidates. Unlike in the reapportionment field, the dilution of voting strength inherent in the challenged ballot position procedure cannot be justified by imprecise census figures; moreover, while disparities in reapportionment schemes may in some cases be justified by such important state interests as the preservation of the integrity of local governmental boundaries (see *Mahan* v. *Howell* (1973) 410 U.S. 315, 325-328 [35 L.Ed.2d 320, 330-332, 93 S.Ct. 979]), the provision challenged here, as we explain below, cannot claim the support of any analagous compelling state interest. Accordingly, the recent reapportionment decisions do not sustain the city's constitutional argument.

[12]In light of this conclusion, we need not determine whether strict judicial scrutiny is appropriate in evaluating every classification scheme which affects a *candidate's* right to run for public office. (See *Zeilenga* v. *Nelson, supra,* 4 Cal.3d 716, 720-723; *Thompson* v. *Mellon, supra,* 9 Cal.3d 96, 98-102; cf. *Bullock* v. *Carter, supra,* 405 U.S. 134, 142-143 [31 L.Ed.2d 92, 99-100].)

and by many local ordinances throughout California.[13] In our view, whatever legitimate interest the state might have in informing voters of the identity of incumbents is fully satisfied by such ballot designation.

An amicus brief filed on behalf of the city argues that since "someone" must get the benefit of the top ballot position, the city may reasonably choose to give such benefit to incumbents. In the first place, the factual premise of this argument is inaccurate, since a rotational ballot procedure can largely eliminate the distorting effects of ballot placement. ■ Moreover, and more fundamentally, we emphatically reject the notion that the government may consciously choose to favor the election of incumbents over nonincumbents in a manner which distorts the preferences of participating voters. In *Legislature* v. *Reinecke* (1973) 10 Cal.3d 396 [110 Cal.Rptr. 718, 516 P.2d 6], our most recent reapportionment decision, we noted the unfairness of an electoral classification scheme which affords advantages to candidates on the basis of incumbency. In rejecting a contention that electoral district boundaries should be designed to promote the reelection of incumbents we stated: "[E]ach incumbent . . . retain[s] the advantage of running as a sitting congressman or state legislator, as the case may be. To go further and to give incumbents the additional advantage of districting designed to preserve the status quo would be unfair both to nonincumbent candidates and to the electors of the new districts who wished to support such candidates." (10 Cal.3d at p. 403; see *Rees* v. *Layton, supra,* 6 Cal.App.3d 815, 823; cf. *Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765, 793.)[14]

[13]In *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 823 [86 Cal.Rptr. 268], the Court of Appeal struck down a Los Angeles ordinance which required incumbents to be designated on the ballot but precluded *any* ballot designation for nonincumbents, reasoning that the ordinance afforded incumbents "an unfair advantage . . . over nonincumbents" without any sufficient justification; we agree completely with this conclusion. Nothing in the *Rees* opinion, however, casts doubt on the constitutionality of a provision, such as Elections Code, section 10219, which permits both incumbent and nonincumbent candidates to list their current occupation, position or other designation on the ballot. Such a provision for nondiscriminatory ballot designation would appear to fully serve the asserted state interest in informing the voters of an incumbent's identity.

[14]In a number of reapportionment decisions the United States Supreme Court has indicated that "[t]he fact that district boundaries may have been drawn in a way that minimizes the number of contests between present incumbents does not in and of itself establish invidiousness." (*Burns* v. *Richardson* (1966) 384 U.S. 73, 89 fn. 16 [16 L.Ed.2d 376, 389, 86 S.Ct. 1286]; *White* v. *Weiser* (1973) 412 U.S. 783, 791, 797 [37 L.Ed.2d 335, 343-344, 347, 93 S.Ct. 2348].) None of these decisions, however, has approved an electoral measure which, like the provision at issue here, substantially gives advantage to incumbents seeking reelection by effectively awarding such candidates a substantial number of "bonus" votes, and we do not read these cases as sanctioning such discrimination against voters supporting nonincumbent candidates.

■ We thus conclude that an election procedure which grants positional preference to incumbents violates the equal protection clause of both our state and federal Constitutions. We note that every other court which has definitively ruled on the constitutionality of similar "incumbent first" ballot procedures has reached the same conclusion. (See *Mann* v. *Powell* (N.D.Ill. 1969) 333 F.Supp. 1261 (three-judge court); *Netsch* v. *Lewis* (N.D.Ill. 1972) 344 F.Supp. 1280; *Matter of Holtzman* v. *Power, supra,* 62 Misc.2d 1020; *Arvan* v. *Wayne County Clerk* (1968) 381 Mich. 761 [160 N.W.2d 345], summarized in *Wells* v. *Kent Election Comrs.* (1969) 382 Mich. 112, 122-123 [168 N.W.2d 222].)[15] As the *Mann* court succinctly stated: "The Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally." (333 F.Supp. at p. 1267.)

In addition to the question of the validity of the "incumbent first" ballot procedure, the instant case also presents the issue of the constitutional permissibility of an "alphabetical order" ballot listing procedure. Although the trial court rendered no explicit findings of fact or conclusions of law on this issue, the court, in ordering that the position of the names on the ballot be determined by lot, rather than by alphabetical order called for by the applicable provisions (see Elec. Code, §§ 10210, 22870), implicitly held the "alphabetical order" procedure invalid. In light of this implicit holding, all parties in this case agree that the constitutionality of an "alphabetical order" listing procedure is properly before us.

■ We have concluded that a procedure which invariably reserves advantageous ballot positions for candidates whose names begin with letters occurring early in the alphabet is unconstitutional. We recognize, of course, that the listing of candidates in alphabetical order is not entirely irrational, for such a system does promote efficiency in voting by making it easier for voters to locate the name of the candidate of their choice on the ballot, especially in races involving a large number of candidates. As discussed above, however, because the substantial advantage which accrues to a candidate in a top ballot position may

---

[15]In *Tsongas* v. *Secretary of Commonwealth* (Mass. 1972) 291 N.E.2d 149, the Supreme Judicial Court of Massachusetts declined to rule definitively on this issue declaring that "[w]e are not prepared on this record to hold that the statutes do or do not violate the Massachusetts Constitution" (291 N.E.2d at p. 153); the court believed that the lower court record did not provide an adequate basis "for evaluating the comparative advantages and disadvantages of alternative systems." *(Id.)* Justice Kaplan, writing in dissent, did reach the merits of the constitutional issue, and concluded that Massachusetts' incumbent preference procedure was invalid. (291 N.E.2d at p. 157.)

significantly distort the equality and integrity of the electoral process, the simple rationality of an alphabetical order procedure is not sufficient to sustain such a provision in this context. Instead, the disparate treatment resulting from such a classification scheme must be shown to be necessary to achieve a compelling governmental interest.

Under this standard of "close scrutiny," we believe that the alphabetical ordering of candidates' names on the ballot is impermissible. In the first place, we doubt that the state interest in promoting speed in the voting booth can properly be characterized as a "compelling" state interest; in the past, numerous cases have refused to permit the state to justify discriminatory legislation on the basis of similar "administrative efficiency" interests. (See, e.g., *Dunn* v. *Blumstein, supra,* 405 U.S. 330, 349-352 [31 L.Ed.2d 274, 288-290]; *Reed* v. *Reed* (1971) 404 U.S. 71, 76-77 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 251]; *Carrington* v. *Rash* (1965) 380 U.S. 89, 96 [13 L.Ed.2d 675, 680, 85 S.Ct. 775].) In any event, the alphabetical ordering of the ballot is by no means "necessary" to further the state interest in promoting voting efficiency, for the state has alternative means, such as affording voters sample ballots in advance of the election, by which the state can largely fulfill its legitimate desire to speed the electoral process. Indeed, the City of Santa Monica, as virtually all jurisdictions in California, already utilizes the sample ballot procedure to further just such a goal. (See Elec. Code, §§ 10009, 10012, 15403.5.) In light of this and comparable alternatives, the city cannot properly justify a ballot procedure which invariably imposes a substantial disadvantage on a distinct, fixed class of candidates' proponents.

Our conclusion finds support in the Arizona Supreme Court decision of *Kautenburger* v. *Jackson* (1958) 85 Ariz. 128 [333 P.2d 293], the only published opinion we have found which addresses the propriety of an alphabetical order ballot provision. In *Kautenburger,* the court considered a state statute which provided that in elections in which voting machines were used, the names of the candidates should be listed in alphabetical order; in elections in which paper ballots were used, Arizona statutes provided for a rotational procedure. After concluding that the trial court's finding of a distinct advantage enjoyed by those candidates at the head of the ballot was supported both by substantial evidence and by the Legislature's provision for a rotation of names on paper ballots, the *Kautenburger* court struck down the alphabetical order provision, holding that the statute unfairly discriminated against the complaining candidate and similarly situated persons simply "[b]y reason of appellee's surname." (333 P.2d at p. 294.)

Having concluded that both the "incumbent first" and "alphabetical order" procedures for listing candidates are constitutionally impermissible, we must determine the appropriate remedy. In the case at bar, the trial court found that in light of the imminence of the coming election, ballots could not be reprinted and circulated pursuant to a rotation method; the court accordingly ordered that the listing of names on the ballot be determined by lot. In light of the exigencies of the circumstances, we have no doubt as to the propriety of the trial court's ruling. (See *Mann* v. *Powell, supra,* 333 F.Supp. 1261, 1267; cf. *Williams* v. *Rhodes* (1968) 393 U.S. 23, 34-35 [21 L.Ed.2d 24, 33-34, 89 S.Ct. 5].)

We must finally determine, however, whether this court should establish a particular procedure to be used in all future elections. Under somewhat similar circumstances, a number of state courts have specifically ordered election officials to implement a ballot rotation method, thereby largely eliminating the potential distorting effect of positional preference. (See *Kautenburger* v. *Jackson, supra,* 85 Ariz. 128; *Elliot* v. *Secretary of State* (1940) 295 Mich. 245 [294 N.W. 171, 173].) Although a rotational system is the most equitable system, and the implementation of such a procedure is generally feasible,[16] we do not believe that it would be appropriate for this court to mandate a single form of procedure that must be followed in every election.

As noted at the outset, the regulation of electoral matters is largely a legislative matter, and legislative bodies have broad discretion in establishing election procedures, subject, of course, to constitutional restraints. At this juncture, we are not prepared to hold that a rotational method is the only constitutionally permissible ballot procedure. Although a lottery system for determining ballot position may strike some as "whimsical" or "capricious," such a system, unlike an "incumbent first" or "alphabetical order" scheme, does not continually work a disadvantage upon a fixed class of candidates; all candidates are at least afforded an equal opportunity to obtain the preferential ballot position. There may well be other non-discriminatory means for determining ballot placement. It is for the appropriate legislative body, and not this court, to choose between such constitutionally acceptable alternatives.

---

[16]As noted earlier, California presently provides for a rotational scheme in many state elections. (See, e.g., Elec. Code, §§ 10202, 10203, 10204, 10206, 10208.) In addition, a commentator writing in 1972 reported that the rotational procedure was the most common method of listing candidates in use throughout the country, having been implemented in 18 states. (See Scott, *California Ballot Position Statutes: An Unconstitutional Advantage to Incumbents* (1972) 45 So.Cal.L.Rev. 365, 379, fn. 37.)

A fundamental goal of a democratic society is to attain the free and pure expression of the voters' choice of candidates. To that end, our state and federal Constitutions mandate that the government must, if possible, avoid any feature that might adulterate or, indeed, frustrate, that free and pure choice; the state must eschew arbitrary preferment of one candidate over another by reason of incumbency or because of alphabetical priority of the first letter of his surname. In our governmental system, the voters' selection must remain untainted by extraneous artificial advantages imposed by weighted procedures of the election process.

The order is affirmed.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

On July 25, 1975, the opinion was modified to read as printed above.