BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE BENJAMIN DE MAYO, COUNTY COUNSEL, COUNTY OF ORANGE, has requested an opinion on the following question:
May a county ordinance that sets a campaign contribution limit for county elective offices require that contributions made by a husband and wife be aggregated for purposes of the limit?
 CONCLUSION
A county ordinance that sets a campaign contribution limit for county elective offices may not require that contributions made by a husband and wife be aggregated for purposes of the limit.
 ANALYSIS
A county has established a $1,400 limit upon individual contributions to county office election campaigns. The county ordinance states:
 No person shall make to any candidate for County elective office or the controlled committee of such a candidate, and no such candidate or committee shall accept from any such person, a contribution or contributions totaling more than one thousand four hundred dollars ($1,400.00) for each of the following elections for which the person is a candidate; a primary election, a special election, or a general (runoff) election.
For purposes of the $1,400 contribution limit, the ordinance requires that contributions made by a husband and wife be combined except for a contribution from a spouse's separate property. The ordinance states: `Contributions by a husband and wife . . . shall be aggregated unless a contribution comes exclusively from the separate property of one spouse.' We are asked whether this restriction placed upon married persons is legally valid. We conclude that it is not.
Preliminary, we note that the county ordinance is intended to serve the general purpose of maintaining public confidence in the electoral process. The ordinance states in part:
 The purpose of this division is to ensure that the financial strength of certain individuals or organizations does not permit them to exercise a disproportionate or controlling influence on the election of Orange County candidates. To achieve this purpose, this division is designed to minimize the opportunity for corruption, to minimize the appearance or perception of corruption, to prevent evasion of the contribution limit, and to maintain public trust in governmental institutions and the electoral process.
With this purpose in mind, we first address the provisions of the Political Reform Act of 1974 (Gov. Code, §§ 81000-91014; "Act"),[1] which regulate the receipt, reporting, and use of campaign contributions in state and local elections. The Act generally preempts any local law that prevents a person from complying with its express provisions. (§ 81013.) In contrast to the county ordinance in question, the Act does not allow contributions from a husband and wife to be combined for purposes of the Act. Section 85308 explicitly states: "Contributions made by a husband and wife may not be aggregated."
Although the ordinance restriction on married persons is in direct conflict with section 85308, the Act generally allows local governments to limit campaign contributions in local elections. Section 85703 provides:
 Nothing in this act shall nullify contribution limitations or prohibitions of any local jurisdiction that apply to elections for local elective office, except that these limitations and prohibitions may not conflict with the provisions of section 85312.
Section 85312 in turn states:
 For purposes of this title, payments for communications to members, employees, shareholders, or families of members, employees, or shareholders of an organization for the purpose of supporting or opposing a candidate or a ballot measure are not contributions or expenditures, provided those payments are not made for general public advertising such as broadcasting, billboards, and newspaper advertisements. However, payments made by a political party for communications to its members who are registered with that party which would otherwise qualify as contributions or expenditures shall be reported in accordance with Article 2 (commencing with Section 84200) of Chapter 4, and Chapter 4.6 (commencing with Section 84600), of this title.
Here, the county ordinance imposes a contribution limit that applies to county elective offices. Nothing in the ordinance conflicts with the terms of section 85312. Accordingly, the ordinance is not preempted by provisions of the Act. (See In re Pelham (2001) 15 FPPC Ops. 1, 2001 FPPC Ops. LEXIS 1, 15-21 [where state law creates rebuttable presumption that minor's campaign contribution is attributable to parent, local ordinance prohibiting contributions from minors in local elections is not preempted].) We next consider the more significant issue of whether the ordinance conflicts with the state and federal Constitutions. (See Johnson v. Bradley (1992) 4 Cal.4th 389, 403 fn. 15.) In 1976, the United States Supreme Court issued its landmark decision in Buckley v. Valeo (1976) 424 U.S. 1, concerning the constitutionality of the Federal Election Campaign Act of 1971, which limited individual contributions and candidate expenditures in presidential campaigns. The court first noted:
 "The Act's contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression" (Id. at p. 14.)
Based upon the need to protect the First Amendment right of association, the court concluded that when establishing campaign contribution limits, a government must "[demonstrate] a sufficiently important interest and [employ] means closely drawn to avoid unnecessary abridgment of associational freedoms." (Id. at p. 25; see McIntyre v. Ohio Elections Comm'n (1995) 514 U.S. 334,347; Planning Conservation League, Inc. v. Lungren (1995) 38 Cal.App.4th 497, 507.)
Here, the county ordinance restriction upon married persons imposes upon a fundamental First Amendment activity. When one spouse has already contributed $1,400 to a candidate, the other spouse's political voice is effectively silenced with respect to that candidate. A rule preventing a class of persons from contributing to a political candidate represents a substantial restriction on the First Amendment freedom of association. (Fair Political Practices Com. v. Superior Court, supra, 25 Cal.3d at p. 45.) Accordingly, in these circumstances, the `strict scrutiny' test applies in considering the constitutionality of the ordinance since its provisions represent `a real and appreciable impact on, or a significant interference with the exercise of a fundamental right.' (Fair Political Practices Com. v. Superior Court (1979) 25 Cal.3d 33, citing Zablocki v. Redhail (1978) 434 U.S. 374, 386387 and Gould v. Grubb (1975) 14 Cal.3d 661, 670; see Board of Supervisors v. Local Agency Formation Com. (1992) 3 Cal.4th 903, 913-914.)
We reject the suggestion that the ordinance's exception for contributions made from a spouse's separate property prevents the ordinance from having an `appreciable impact' on the exercise of a fundamental right and thus should not be subject to the `strict scrutiny' test. In the first place, married persons with community property assets sufficient to make two $1,400 contributions to one candidate may not have adequate separate property resources to do the same thing. Further, although spouses may change their community property assets to separate property by agreement (Fam. Code, § 850), the technical complexities in making the change (see Fam. Code, § 852; Estate of MacDonald (1990)51 Cal.3d 262, 264, 271-273; In re Marriage of Barneson (1999) 69 Cal.App.4th 583, 588) may deter married persons from attempting to make two $1,400 contributions from separate property to the same candidate. Thus, the separate property exception does not prevent the ordinance from having an `appreciable impact' upon a fundamental right, and as a result, the strict scrutiny test is applicable to the ordinance. (See Fair Political Practices Com. v. Superior Court, supra, 25 Cal.3d at pp. 48-49; see also Zablocki v. Redhail, supra, 434 U.S. at pp. 386-387.)
Under the strict scrutiny test, a statute or ordinance is unconstitutional if it is substantially overbroad or underinclusive. (See Planning Conservation League, Inc. v. Lungren, supra, 38 Cal.App.4th at p. 507.) As observed by the court in Board of Supervisors v. Local Agency Formation Com., supra, 3 Cal.4th at 903:
. . . Under this very severe standard, a discriminatory law will not be given effect unless its classification bears a close relation to the promoting of a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means possible." (Id. at p. 913.)
Here, the asserted purpose of the county ordinance — to prevent individuals from exercising a disproportionate or controlling influence on local elections by preventing corruption or the appearance of corruption — does qualify as a compelling and important government purpose. The court in Buckley noted that the primary purpose of the Federal Election Campaign Act of 1971, to prevent corruption or the appearance of corruption resulting from large individual financial contributions, was a `constitutionally sufficient justification' for a $1,000 campaign contribution limit. (Buckley v. Valeo, supra, 424 U.S. at p. 26.) Cases following Buckley have consistently reached the conclusion that preventing corruption of the political process constitutes a compelling government interest. (See, e.g., FEC v. National Conservative PAC (1985)470 U.S. 480, 496-497; First National Bank of Boston v. Bellotti (1978) 435 U.S. 765, 788-789; Griset v. Fair Political Practices Com. (1994) 8 Cal.4th 851, 861-862.)
But while the county ordinance attempts to serve a compelling government interest, we believe that it is not sufficiently tailored to survive the strict scrutiny test. First, we find no rational connection between (1) requiring political contributions by married persons to be combined and (2) the goal of preventing individuals from exerting disproportionate or controlling influence in an election. When the applicable contribution limit is $1,400 per person, two $1,400 contributions from two different persons cannot rationally be said to be either disproportionate or controlling.
Second, the circumstances presented do not establish a connection between marital status and political corruption. The fact that spouses enjoy equally the right to control their community property (Fam. Code, §§ 1100-1102) may enhance one or both spouses' ability to make large contributions, but it does not follow that married persons are therefore more likely than unmarried persons to evade a campaign contribution limit or otherwise foster political corruption in connection with their contributions.
To the extent that the county's concern is that shared financial arrangements, such as the use of a joint checking account, may make it easier for one spouse to make a political contribution in the other spouse's name,[2] we note that the ordinance is overbroad with respect to married persons who put their community property into separate checking accounts. As to this concern, the ordinance is also underinclusive with respect to unmarried persons who share financial arrangements such as joint checking accounts.[3]
To the extent that the county's concern is that a married person may exercise disproportionate spending power by influencing his or her spouse to make a contribution to the same candidate, the ordinance is again underinclusive because interpersonal influence is not limited to marital relationships. We also believe, again, that as to such a concern, the ordinance is overbroad because it cannot be reasonably presumed that married people control one another's personal choices. `[T]he marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup.' (Eisenstadt v. Baird (1972) 405 U.S. 438,453; see Application of Gaulkin (N.J. 1976) 351 A.2d 740,744-746 [rejecting prohibition against spouses of judges running for public office]; see generally Mississippi University for Women v. Hogan (1982) 458 U.S. 718, 724-726
[discussing invalidity of state interests grounded in stereotyped ideas of gender roles].)[4]
Finally, we note that neither state law nor federal law require spouses' contributions to be combined for purposes of campaign contribution limits. (§ 85314, subd. (a) [`Contributions made by a husband and wife may not be aggregated']; 11 C.F.R. § 110.1(i) (2003) [`The limitations on contributions of this section shall apply separately to contributions made by each spouse even if only one spouse has income'].) In contrast to state and federal law, the county ordinance restriction upon married persons unnecessarily intrudes into First Amendment interests.
We conclude that a county ordinance that sets a campaign contribution limit for county elective offices may not require that contributions made by a husband and wife be aggregated for purposes of the limit.
[1] All references hereafter to the Government Code are by section number only.
[2] We note that for purposes of the Act, section 84301 states: `No contribution shall be made, directly or indirectly, by any person, in any name other than the name by which such person is identified for legal purposes.
[3] The regulations of the Fair Political Practices Commission interpreting the requirements of the Act impose various attribution rules to contributions made from a joint checking account:
 (a) A contribution made from a checking account by a check bearing the printed name of more than one individual shall be attributed to the individual whose name is printed on the check and who signs the check, unless an accompanying document directs otherwise. The document shall indicate the amount to be attributed to each contributing individual and shall be signed by each contributing individual whose name is printed on the check. If each individual whose name is printed on the check signs the check, the contribution shall be attributed equally to each individual, unless an accompanying document signed by each individual directs otherwise.
If the name of the individual who signs the check is not printed on the check, an accompanying document, signed by the contributing individuals, shall state to whom the contribution is attributed.
(b) For purposes of this regulation, each contributing individual is a `person' as defined in Government Code section 82047 and is subject to the contribution limitations set forth in Government Code sections 85301 and 85303.
(c) If the individual who signs the check or accompanying document is acting as an intermediary for another contributor, this regulation shall not apply and Regulation 18432.5 shall apply instead.' (Cal. Code Regs., tit. 2, § 18533.)
[4] The Act addresses the situation of persons combining their resources by treating `persons acting in concert' as one person for purposes of a campaign contribution limit. (§ 82047.)