[Civ. No. 1521. Third Appellate District.—March 10, 1916.]

THE PEOPLE, etc., ex rel. CAMILLUS R. SMITH, Respondent, v. H. L. GUNN, Appellant.

PUBLIC OFFICERS—SEPARATION OF DUTIES OF CONSOLIDATED OFFICES—DECLARATION OF VACANCY AND APPOINTMENT—POWER OF BOARD OF SUPERVISORS.—A board of supervisors has no power, under section 4018 of the Political Code, which provides that where the duties of two offices have been consolidated, the board may by ordinance "elect to separate the duties so consolidated . . . without reconsolidation, and provide that the duties of each office shall be performed by a separate person, whenever, in their discretion, the public interest will be best subserved thereby," after separating the duties of the office of county auditor and county recorder, to declare the office of auditor vacant and then proceed to fill it.

ID.—VACANCIES IN OFFICE—POWER TO FILL—CONSTRUCTION OF CODE.—The power of a board of supervisors is limited to the filling of vacancies, and an office becomes vacant only upon the happening of any of the events enumerated in section 996 of the Political Code, and the separation of the duties of two offices is not a "removal from office" within the meaning of subdivision four of such section.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Percy S. King, and Clarence N. Riggins, for Appellant.

U. S. Webb, Attorney-General, and Frank M. Silva, for Respondent.

CHIPMAN, P. J.—Action in *quo warranto* involving the office of auditor of the county of Napa. The board of supervisors of said county, on January 5, 1885, duly passed ordinance No. 9, section 1 of which was as follows:

"Section 1. The duties of the offices of auditor and recorder of Napa county are hereby consolidated, and the person elected to fill such offices must discharge all the duties pertaining to both such offices."

The court found that ordinance No. 9 "is still in full force and effect, except in the particulars hereinafter stated." It is then found that, on November 10, 1915, the said board duly passed ordinance No. 91, as follows:

"Section 1. It appearing to this board that the public interest will be best subserved thereby, this board does hereby elect to separate the duties of the office of auditor from the duties of the office of recorder, heretofore consolidated, without reconsolidation.

. "Section 2. This board having elected to separate the duties of said offices, heretofore consolidated, without reconsolidation, the duties of the office of auditor and the duties of the office of recorder shall hereafter be performed by a separate person.

"Section 3. The incumbent, in the said consolidated office of auditor and recorder, shall continue to fill the office and perform the duties of the office of recorder, and the office of auditor shall be filled by appointment by this board on and after this ordinance shall take effect.

"Section 4. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"This ordinance shall take effect and be in force 30 days after its final passage."

The court also found that, since December 10, 1915, ordinance No. 91 "has been and still is in full force and effect." The court made the following findings:

"V. That section 3 of said ordinance No. 91 provides as follows: 'The incumbent, in the said consolidated office of auditor and recorder, shall continue to fill the office and perform the duties of the office of recorder, and the office of auditor shall be filled by appointment by this board on and after this ordinance shall take effect.'

"VI. That thereafter, to wit, on or about the 21st day of December, A. D. 1915, the said board of supervisors by a resolution duly and regularly passed at a regular meeting of said board of supervisors, declared that a vacancy then and there existed in the said office of auditor of the county of Napa, in said state of California, which said resolution is in the words and figures following, to wit:

" 'Whereas, this board of supervisors has heretofore passed and adopted an ordinance separating the office of auditor from the office of county recorder,

" 'And whereas, said ordinance is now in force and effect

" 'Be it resolved the board adjudge and determine that a vacancy does by reason of such separation now exist in the office of auditor.'

"VII. That after the passage of said resolution declaring a vacancy in the office of auditor of Napa county as aforesaid, and on said 21st day of December, 1915, the said board of supervisors of Napa county duly and regularly appointed the plaintiff, Camillus R. Smith, auditor of said Napa county."

It is then found that the said Smith, on or about December 29, 1915, duly qualified as said auditor, reciting the steps taken to effect such qualification; that, on or about January 3, 1916, the said Smith "demanded in writing of the said Gunn that he deliver over to him the said Camillus R. Smith, the said office of auditor," the books, documents, records, etc., pertaining to said office of auditor, which the said Gunn refused to do and "the said H. L. Gunn did then and there and thereupon usurp, intrude into and unlawfully hold and exercise said public office of auditor . . . against the said Camillus R. Smith, the duly appointed and qualified auditor of said Napa county as aforesaid"; that, prior to January 3, 1916, defendant did not usurp or intrude into or unlawfully hold or exercise the public office of auditor of said county. Finding XII is as follows:

"That at the general election held throughout the state of California on the 3rd day of November, 1914, H. L. Gunn, the defendant herein, was duly and regularly elected to the offices of recorder and auditor of the county of Napa, state of California. That he duly and regularly qualified as such and entered upon the performance of the duties of said offices, and continued to lawfully exercise the same until said 3rd day of January, 1916, as aforesaid."

As conclusions of law the court found that defendant Gunn "was not on January 3, 1916, and has not at any time been since, and is not now, entitled to hold or exercise or perform the duties of the office of auditor of the county of Napa . . . and that on said 3rd day of January, 1916, he usurped and intruded into the same . . . and that said defendant H. L. Gunn should be immediately excluded from said office . . . and that said plaintiff Camillus R. Smith was and now is the duly appointed and qualified auditor of said county of Napa, on the 3rd day of January, 1916, and ever since has been and now is entitled to the possession of said office."

Judgment was accordingly entered from which defendant appeals.

The action taken by the supervisors in passing ordinance 91 was under section 4018 of the Political Code, which provides that where the duties of two offices have been consolidated, the board may by ordinance "elect to separate the duties so consolidated . . . without reconsolidation, and provide that the duties of each office shall be performed by a separate person, whenever, in their discretion, the public interest will best be subserved thereby." The facts as found by the court show that the consolidation of the offices of auditor and recorder occurred some years prior to the passage of ordinance 91, and that when this ordinance was enacted the defendant was the duly elected, qualified, and acting auditor and recorder, having been chosen by the votes of the electors at the general election in November, 1914.

That the county auditor and recorder are elective officers, made so by the legislature, is not disputed. Section 5, article XI, of the constitution provides that "the legislature by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys and such other county officers . . . as public convenience may require," etc. Section 4, article XX, is as follows: "All officers or commissioners whose election or appointment is not provided for by this constitution, and all officers or commissioners whose offices or duties may hereafter be created by law, shall be elected by the people or appointed as the legislature may direct." In a certain sense, the officers referred to in section 5, article XI, or officers other than those whose election or appointment is not provided by the constitution, referred to in section 4, article XX, are not usually called constitutional officers. But they are created by authority of the constitution, and except that their election or appointment is not specifically provided for by the constitution, are as much constitutional officers as are those thus provided for. The one class must look to the constitution for the mode of their election or appointment, while the other class must look to the provisions made by the legislature under the authority of the constitution. The class of county officers to which the county auditor belongs is composed of officers who are by the legislature made elective.

Section 4021 of the Political Code provides that "all elective county and township officers, except otherwise provided for in this title and by law, shall be elected at the general election at

which the governor is elected. . . . All officers elected under the provisions of this title shall hold office until their successors are elected or appointed and qualified. . . . '' Among the county officers so classified by section 4013 some are made elective by act of the legislature and others, for example, fish and game warden, are appointed by the supervisors; section 4149b; fish and game commissioners—the governor appoints; section 344; livestock inspectors—supervisors appoint; section 4149.

But respondent contends that section 4018 of the Political Code confers authority upon the board to separate the duties of auditor and recorder and to provide that the duties of each office shall be performed by a separate person and that, having taken such action, a vacancy necessarily occurred which the board may fill under subdivision 19, section 4041, of the Political Code. This section empowers the board to fill by appointment all vacancies that may occur in any county office except the offices of judge and supervisor. In short, the contention is that the board may create the vacancy and then proceed to fill it. This contention, it seems to us, is not maintainable. Section 996 of the Political Code provides how vacancies may occur. None of the nine enumerated ''events,'' upon the happening of which before the expiration of the term will cause a vacancy, can be said to apply to the case here Respondent calls attention to the fourth subdivision which says that a vacancy occurs, referring to an incumbent, ''upon his removal from office,'' and asks, ''Has not appellant been 'removed from office,' as provided by the legislature?'' Unhesitatingly we answer that the separation of the duties of auditor and recorder, as provided for in section 4018, is not in any sense a ''removal from office'' as contemplated by section 996. In *Rosborough* v. *Boardman,* 67 Cal. 116, [7 Pac. 261], it was held that the power of the supervisors to appoint petitioner depended upon there being a vacancy, and an office becomes vacant only upon the happening of any of the events enumerated in section 996 of the Political Code, among which the event relied on in that case is not mentioned. In *People* v. *Ward,* 107 Cal. 236, [40 Pac. 538], the court pointed out that the rule in the Rosborough case could not be safely applied in all cases for the legislature, as was shown, had added to the list of ''events'' which would work a vacancy. (*People* v. *Ward,* 107 Cal. 241, [40 Pac. 538].) But there is nothing

said in that case to justify respondent's claim that section 4018 furnishes such an "event." The court said, in *People* v. *Ward:* "The power of the supervisors is limited to the filling of vacancies. That power could be exercised solely upon an existing vacancy. The board could not by its action create a vacancy, nor by anticipation fill one, which was to arise *in futuro* during the term of its successor."

One may ask why and upon what authority the board elected to declare the office of auditor to be vacant and not that of recorder? The board may separate the duties of the two officers but the offices remain undisturbed. The office of recorder still existed and there was an incumbent chosen, as the legislature had provided—by the electors at a general election. There is certainly no express authority given in section 4018 to appoint an auditor and none to treat the office as vacant, and we do not think that any such authority can be held to have been given by implication.

*People on the Relation of Rynerson* v. *Kelsey,* 34 Cal. 470, was a case in *quo warranto.* At that time the constitution required that assessors and collectors of town, county, and state taxes, shall be elected, etc. Rynerson was elected sheriff of San Joaquin County, September 6, 1865, and duly qualified as such sheriff. The statute devolved upon the sheriff the duties of tax collector of the county. He duly qualified as such collector and entered upon his duties as sheriff and *ex-officio* tax collector. Kelsey was elected county treasurer at the same election. Subsequently, April 2, 1866, the legislature passed an act making the county treasurer *ex-officio* tax collector to take effect from and after the first Monday in March, 1867. Pursuant to the act, Kelsey, as county treasurer, entered upon the duties of tax collector, excluding the sheriff therefrom. It was held that "the legislature might repeal the law devolving the duties of tax collector upon the sheriff, and thereby deprive the sheriff of the right to perform the duties of tax collector, provided such repeal does not, in effect, abolish the office of tax collector, but it does not follow that the legislature has the power of conferring the duties of tax collector on any of the county officers or person not elected to the office by the electors of the county." The court said: "Unquestionably the legislature may by law provide that the county treasurer, sheriff or any other county officer shall perform the duties of tax collector; but the law devolving such

*ex-officio* duty upon any county officer must precede the election of such officer, so that the electors of the county may have an opportunity under the law of selecting the person or officer charged with the duties of tax collector. . . . It is not pretended that a vacancy had occurred in the office of tax collector, nor that such vacancy had been in any legal manner declared on the first Monday of March, 1867, the day on which said statute by its terms took effect, and respondent entered upon the duties of tax collector and excluded appellant therefrom. The statute was not enacted for the purpose of filling a vacancy in the office of tax collector actually existing or prospective. Its design is to make the treasurer of San Joaquin County *ex-officio* tax collector instead of the sheriff. This the legislature could not accomplish until after the treasurer had been elected, under the law, by the qualified electors of the county.'' Cited in *Mills* v. *Sargent,* 36 Cal. 382, holding the act operative as to future elections. Cited, also, to the effect that an officer may be deprived of *ex-officio* position as tax collector, but not during his term, in *Swinnerton* v. *Monterey County,* 76 Cal. 113, 116, [18 Pac. 135]. (See, also, *People* v. *Wells,* 2 Cal. 198; *Christy* v. *Board of Supervisors,* 39 Cal. 3.)

Respondent claims that the case of *People* v. *Kelsey,* and other cases cited by appellant were not applicable ''because, under the constitution of 1849, the office of tax collector was a constitutional office, and the constitution provided that a tax collector should be elected by the people.'' The present constitution makes the auditor elective or appointive as the legislature may direct and the legislature has directed that it be elective. Having thus conferred the power upon the legislature to provide the mode of choosing that officer, and the legislature having acted, the mode so provided and so determined by the legislature becomes for the time being the only mode of selection. The principle of the Kelsey case, it seems to us, governs here, and while the supervisors were acting within the power given them to separate the duties of auditor and recorder, the board had no authority to appoint some person other than the incumbent, or any person for that matter, to fill that office. Obviously, this must be so, inasmuch as the only mode provided by law to select an auditor is by election by the people.

Section 4017 of the Political Code provides for the consolidation by the supervisors of the duties of several different county officers, to wit: "Sheriff and tax collector; auditor and recorder; county clerk, auditor and recorder; county clerk and recorder; county clerk and auditor; treasurer and tax collector; treasurer and recorder; assessor and tax collector; public administrator and coroner; district attorney and coroner; sheriff and public administrator." Section 4018 authorizes the board to "separate the duties so consolidated." It is easily conceivable that, under the powers here given, if the supervisors can lawfully do what is here attempted, they might make any office of their selection appointive, at least, for the time being, by vacating that office or separating its duties and thus remove the incumbent selected by the people. Thus, the supervisors could separate the duties devolved upon the district attorney and coroner as consolidated, and declare the office of district attorney, filled by the vote of the people, vacant, and appoint a successor.

Of course, it is not to be presumed that a public officer will violate his duty or act in bad faith in its discharge. The supervisors might conscientiously believe, and so act on their belief, that they would best subserve the interests of the people by so separating the duties, or so consolidating them in a given case as to make necessary the appointment of persons of their own selection rather than those chosen by the people. The temptation to do this might be strong and be supported by the best judgment of the supervisors. We do not think the statute should be so construed as to allow either their judgment or temptation to be so far gratified as to allow them to declare a vacancy and fill it by appointment under the guise of subserving the public interest. It is safer and, we think, better that the principle enunciated in the Kelsey case, *supra,* should be followed, and the choice of the electors remain undisturbed until they may have an opportunity at the next election to fill the offices in accordance with the separation of duties as declared by the supervisors.

Respondent cites *Kinsey* v. *Kellogg,* 65 Cal. 111, [3 Pac. 405], as a case "that comes nearer to the case at bar than any other in California." In that case it appeared that by the act of February 28, 1876, it was provided that "the county clerk shall receive for all services required of him as county clerk and *ex-officio* clerk of the district court, probate court,

board of supervisors, board of equalization, auditor and *ex-officio* county recorder, a salary of $5,000 per annum, which salary shall be in full for all services required of and performed by him.'' In 1880 Humboldt County passed into class two. Prior to the election of plaintiff as county clerk the supervisors did not consolidate the office of county clerk with those of recorder or auditor, or either of them. But, on July 8, 1882, the board consolidated the offices of recorder and auditor by ordinance duly published before the election in November of that year. At that general election plaintiff was elected clerk and defendant recorder and *ex-officio* auditor of Humboldt County. Plaintiff entered upon the discharge of the duties of county clerk on the first Monday of January, 1883, and defendant commenced to act as recorder and auditor on the eighth day of January, 1883, and so continued to discharge the duties of his office. On February 8, 1883, the board fixed the salary of the clerk at two thousand seven hundred dollars. After he had served one month he demanded of defendant a warrant for the sum of $416.66 (1-12 of five thousand dollars) for the preceding month, which was refused, and he brought mandate to compel the issuing of the warrant. The lower court refused the writ and plaintiff appealed. In dealing with the situation the supreme court said: ''Here, when the act of 1876 was passed, there was a person who was discharging the duties of clerk, recorder, and auditor, and unless subsequent legislation should require otherwise, one person would continue to fill the three separate offices. It was to this condition of things that the law was made applicable, and the compensation provided by it was provided as compensation to the clerk, the recorder, and the auditor. The law did not determine how much should be paid to each of the three officers—a matter of no consequence so long as the three offices were in one man. But when the organization of the county government was changed, and the person who was clerk was not auditor nor recorder, it is clear that no one of the three officers was entitled to receive the compensation intended for the three; and as the act of 1876 did not provide for the event, the act, by force of its own expressions, became inoperative when the event occurred. As there was no operative law fixing the compensation of the county clerk after Humboldt became organized as a county of the second class, the board of supervisors had authority to fix the compensation

of that officer.    (Pol. Code, sec. 4046, subd. 18.)    Judgment affirmed.''

It will at once be seen that the power exercised by the supervisors in the present case was not involved in the Humboldt County case.    There the clerk and the auditor and recorder each was elected after the passage of the ordinance, and each continued to discharge the duties of the office to which he was elected.    The act of 1876 was no longer operative, and the court very properly held that the supervisors could fix the salary of the clerk, the only question involved.

Our conclusion is that the learned trial court was in error in its view of the statute.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.