[No. S046006. Dec. 11, 1995.]

SUSAN B. ANDERSON, as County Clerk, etc., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent and Real
Party in Interest.

## COUNSEL

Lozano, Smith, Smith, Woliver & Behrens, Eileen M. O'Hare and Jerome M. Behrens for Petitioner.

Phillip S. Cronin, County Counsel, J. Wesley Merritt, Chief Deputy County Counsel, and Barbara Booth Grunwald, Deputy County Counsel, for Respondent and Real Party in Interest.

## OPINION

**LUCAS, C. J.**—California Constitution, article VI, section 4, provides: "In each county there is a superior court of one or more judges. The Legislature shall prescribe the number of judges and provide for the officers and employees of each superior court. . . . [¶] The county clerk is ex officio clerk of the superior court in the county." (See also Gov. Code, § 26800; all further section references are to this code.) Since 1977, section 69898, subdivision (d) (section 69898(d)) has authorized superior courts to transfer the duties of superior court clerk to an appointed court executive officer. In *Zumwalt* v. *Superior Court* (1989) 49 Cal.3d 167, 179 [260 Cal.Rptr. 545, 776 P.2d 247], we affirmed the constitutionality of section 69898(d), and held the Legislature may authorize superior courts to assign court-related duties otherwise imposed on the county clerk to a superior court executive officer.

The sole question in this matter is whether such a transfer may be made effective before expiration of a county clerk's elective term. We conclude it may.

I.

Section 69898(d) provides: "Notwithstanding any other provision of law, a superior court having an executive or administrative officer may, by local

rule, specify which of the powers, duties and responsibilities required or permitted to be exercised or performed by the county clerk in connection with judicial actions, proceedings and records shall be exercised or performed by the executive or administrative officer. The county clerk shall be relieved of any obligation imposed on him [or her] by law with respect to these specified powers, duties and responsibilities, to the extent the local rule imposes on the executive or administrative officer the same powers, duties and responsibilities."

Transfer of superior court duties under section 69898(d) enhances court efficiency, and is encouraged by section 68502.5, which directs the Trial Court Budget Commission (*ibid.*; see also Cal. Rules of Court, rule 1026, as amended eff. Jan. 25, 1995) to provide funding "incentives and rewards" to courts that implement transfer of court clerk duties under section 69898(d). (§ 68502.5, subd. (a)(4); see also Cal. Standards Jud. Admin., § 29, as amended eff. Jan. 25, 1995 [Deering's Cal. Ann. Codes, Rules (Appen.) Div. I., § 29 (1996 ed.) pp. 2354-2355]; Cal. Rules of Court, rule 991(b) & (c), as amended eff. Jan. 25, 1995.) At least 42 counties have done so.

In June 1994, petitioner was reelected Fresno County Clerk for a four-year term commencing January 2, 1995. By all accounts, her performance was and remains excellent. Nevertheless, after her reelection, but more than three months before the start of her second term, the Fresno County Superior Court judges, pursuant to section 69898(d), adopted local rule 22. The rule imposes the duties of superior court clerk on the court executive officer, and removes those duties—and corresponding employees (comprising about two-thirds of the county clerk's office)—from the county clerk. The county board of supervisors approved the necessary budget and personnel transfers. The rule was set to take effect December 30, 1994.

In mid-December 1994, petitioner filed this original proceeding in the Court of Appeal, seeking a writ of mandate staying implementation of rule 22 and the county personnel and budget transfers until expiration of her second term. The Court of Appeal issued a temporary stay, and subsequently rendered a decision commanding the superior court to vacate rule 22. The majority acknowledged that the Legislature has the power to reallocate the superior-court-related duties of the county clerk, but concluded transfer of those duties before expiration of petitioner's second term of office would unconstitutionally "imping[e] on the electorate's right to vote." Accordingly, and in order to avoid "mischief and absurdity," the majority construed section 69898(d) to permit transfer only after expiration of petitioner's second term.

## II.

We have addressed the "timing" question posed here in only two cases, both antique. As the Court of Appeal acknowledged, the first decision,

*Attorney-General* v. *Squires* (1859) 14 Cal. 12 (*Squires*), supports respondent superior court.

In 1857, P.S. Mulford was elected to a two-year term as Sheriff of Calaveras County. At the time of election, the Calaveras Sheriff served also as "*ex officio* Collector of foreign miners' tax or license." (*Squires, supra,* 14 Cal. at p. 16.) Effective March 1859—i.e., 10 months before expiration of Mulford's term—the Legislature stripped him of authority and duty to license foreign miners, and directed the county board of supervisors to appoint others to discharge that duty. (*Id.* at p. 15.)

Mulford objected to the diminution of his duty and authority during his term of office. We framed the issue as follows: "Is it competent for the Legislature, having vested certain duties in a public officer, for the discharge of which he has given bond, and for whose services compensation is allowed, to take those duties and the fees from the office before the expiration of the term, and confer them on another officer?" (*Squires, supra,* 14 Cal. at p. 15.)

We noted that, under the Constitution, "Assessors and Collectors of town, county, and State taxes" were to be "*elected* by the qualified electors of the district, county, or town, in which the property taxed . . . is situated." (Cal. Const. of 1849, art. XI, § 13, italics added.) We questioned, however, whether the duty removed from Sheriff Mulford—licensing of foreign miners—was a "necessary appendage of the office of Tax Collector . . . ." (*Squires, supra,* 14 Cal. at p. 16.) We ultimately answered that question in the negative, concluding the duty to license foreign miners, unlike the duty to collect taxes on land or personal property, was delegable to "other persons than Tax Collectors," and that the Legislature's midterm transfer of licensing duty to appointees of the county board of supervisors did not violate the constitutional requirement that "Tax Collectors" be elected. (*Id.* at pp. 17-18.)

*Squires, supra,* 14 Cal. 12, thus stands for the proposition that the Legislature may, during a term of elective office, enact a statute transferring a duty of that office midterm to an appointee, so long as the transferred duty is outside the class of matters that may be performed only by one elected to perform them—i.e., so long as the duty is assignable to an appointee in the first instance. Because the court found the duty to license foreign miners was a duty that could be assigned to appointed officials in the first instance, it approved transfer of that duty from the elected sheriff to an appointed officer.

In the second case addressing the issue raised here, *People* v. *Kelsey* (1868) 34 Cal. 470 (*Kelsey*), this court, without citing *Squires, supra,* 14 Cal.

12, held invalid a county's attempt to transfer the entire office of tax collector from the elected Sheriff of San Joaquin County to the elected treasurer of that county. Petitioner asserts, and the Court of Appeal majority below agreed, that in doing so *Kelsey* "overrule[d], by implication, the holding of *Squires* as to the timing of the transfer of duties." But as will appear below, *Kelsey* is consistent with *Squires*, and distinguishable from the present case.

In September 1865, C. C. Rynerson was elected to a two-year term as sheriff. At that time, a statute imposed on the sheriff "the duties of Tax Collector of the county." (*Kelsey, supra,* 34 Cal. at pp. 472-473.) Thereafter, another statute enacted April 1866 and effective March 1867, transferred the office of "*ex officio* tax collector" from the county sheriff to the county treasurer. (*Kelsey, supra,* 34 Cal. at p. 473.) We held the Legislature lacked power to "confer[] the duties of Tax Collector on any other county officer or person *not elected to the office* by the electors of the county." (*Id.* at p. 475, italics added.)

As in *Squires, supra,* 14 Cal. 12, we began our analysis with article XI, section 13, of the 1849 California Constitution, which, as noted above, required that tax collectors be elected. We found this provision "restricts the power of the Legislature to a particular mode of providing . . . Collectors of town, county and State taxes in the first instance . . . . [¶] Unquestionably the Legislature may by law provide that the County Treasurer, Sheriff or any other county officer shall perform the duties of Tax Collector; but the law devolving such *ex officio* duty upon any county officer, must precede the election of such officer, so that the electors of the county may have an opportunity under the law of selecting the person or officer charged with the duties of Tax Collector." (*Kelsey, supra,* 34 Cal. at p. 475.) We held the statute unconstitutional "so far as [it] assumes to transfer the duties of the office of Tax Collector from the Sheriff, an officer elected in contemplation of performing the duties of Tax Collector, to the Treasurer, an officer not selected by the electors of the county as Tax Collector . . . ." (*Id.* at p. 476; see also *Christy* v. *B. S. Sacramento Co.* (1870) 39 Cal. 3, 11.)

Thereafter, in *Mills* v. *Sargent* (1868) 36 Cal. 379 (*Mills*), which involved the successors in office to the parties in *Kelsey, supra,* 34 Cal. 470, we described *Kelsey* as follows: "[W]e held, that, *under the Constitution which required a Tax Collector to be elected, as such, by the people,* it was incompetent for the Legislature, after a Tax Collector had been elected for a term by the people, to transfer the office from the party so elected with a view to that office, to another party who was not elected with any view to a discharge of so important duties." (*Mills, supra,* 36 Cal. 379, 382, italics

added.) Contrary to the dissenting opinion, nothing in *Mills, supra*, suggests that *Kelsey, supra*, turned on the broad proposition that *"duties* [may not be] taken away from someone whom the electorate had chosen to perform them, thereby nullifying the voters' choice." (Dis. opn. of Kennard, J., *post*, at p. 1168, italics added.) Indeed, *Mills* clearly reemphasizes the *sole* and narrow reason why *Kelsey* invalidated the transfer: Under the Constitution, the *particular* transferred duty at issue could be performed only by one elected to do so.

*Kelsey, supra*, 34 Cal. 470, is not inconsistent with *Squires, supra*, 14 Cal. 12, and, in fact, the two cases are harmonious. As noted above, in *Squires, supra*, we permitted transfer, during the county sheriff's term of office, of the duty to license foreign miners. We reasoned that the transfer was proper because it did not involve delegation of the "necessary duties of the Tax Collector—as [would collection of] a tax on land or personal property." (*Squires, supra*, 14 Cal. at p. 18.) By contrast, in *Kelsey, supra*, 34 Cal. 470, the Legislature attempted to transfer the "necessary duties" of tax collector —the entire office—from one person who was elected "in contemplation" of performing such duties, to another officer whom the voters did not contemplate would fill the office of tax collector. Accordingly, the purported transfer in *Kelsey, supra*, was illegal, because, unlike *Squires, supra*, 14 Cal. 12, it violated the constitutional provision (Cal. Const. of 1849, art. XI, § 13) requiring election of tax collectors. Nothing in *Kelsey, supra*, 34 Cal. 470, suggests a midterm transfer would be illegal if the transferred duties are outside the class of matters that may be performed only by one elected to do so, and are instead within the class of matters that may be assigned in the first instance to an appointee—as was the case in *Squires, supra*, 14 Cal. 12.

*Kelsey, supra*, 34 Cal. 470, was followed in two early Court of Appeal opinions, and one leading Attorney General opinion.

In *People v. Gunn* (1916) 30 Cal.App. 114 [157 P. 619] (*Gunn*), a county attempted to transfer the duties of auditor midterm to a person not elected to perform those duties. The county endeavored unsuccessfully to distinguish *Kelsey, supra*, 34 Cal. 470, on the ground that unlike in *Kelsey*, the office of auditor was made elective by the Legislature, rather than by the Constitution. The court noted that the Constitution allowed the Legislature to determine whether auditors shall be elected or appointed, and "the Legislature having acted, the mode so provided and so determined by the Legislature becomes for the time being the only mode of selection. The principle of the *Kelsey* case, it seems to us, governs here. . . ." (*Gunn, supra*, 30 Cal.App. at p. 120.) Accordingly, because "the only mode provided by law to select an auditor is by election by the people" (*ibid.*), the *Gunn* court concluded *Kelsey*

precluded midterm transfer of the auditor's duties to an official not elected to perform those duties. (30 Cal.App. at pp. 120-121.)

In *Kelly* v. *Kane* (1939) 34 Cal.App.2d 588, 591 [94 P.2d 384] (*Kane*), a county transferred the duties of purchasing agent midterm from appointee Kelly to another appointee. Kelly asserted unsuccessfully that the transfer was illegal under *Kelsey, supra,* 34 Cal. 470. The *Kane* court construed *Kelsey, supra,* 34 Cal. 470, as establishing the following propositions: when the transferred duty is one that may be performed only by a person elected to do so, the transfer may take effect only at the end of the elective term; but when a duty is properly assignable in the first instance to an appointee, the transfer may take effect during an elective term. (34 Cal.App.2d at p. 591.) Because the transferred duty (of purchasing agent) in *Kane* was assignable in the first instance to an appointee, the *Kane* court held the duty could be transferred midterm from an appointee to another officeholder not elected to perform those duties.

Finally, in Opinion No. 53-82, 22 Ops.Cal.Atty.Gen. 177, 179-182 (1953), the Attorney General advised that the duties of ex officio clerk of the board of supervisors—again, duties properly assignable in the first instance to an appointee—could be transferred midterm from the elected county clerk to an appointee of the board. After a thorough analysis of *Kelsey, supra,* 34 Cal. 470, and *Gunn, supra,* 30 Cal.App. 114, the Attorney General explained that "the principle of the *Gunn* and *Kelsey* cases [did] not apply" because "the ex officio office, which was attached to that of the County Clerk at the time of his election, was not an elective one. (Opn. 53-82, 22 Ops.Cal.Atty.Gen., *supra,* 177, 178-179.) Where the office which the elected officer holds ex officio is not an elective one, the legislative body . . . may segregate it during the current term and appoint another person to fill it. The segregation of the ex officio office in such a case does not deprive the voters of any franchise, which they might otherwise have, to choose the person to fill the ex officio office." (Opn. 53-82, 22 Ops.Cal.Atty.Gen., *supra,* 177, 181.) The Attorney General then quoted extensively from *Kane, supra,* 34 Cal.App.2d at page 591, and concluded that under *Kane,* transfer was proper because the duty that was transferred from the elected county clerk was a duty that was properly assignable to an appointed official in the first instance. (Opn. 53-82, 22 Ops.Cal.Atty.Gen., *supra,* 177, 181-182.)

The dissenting opinion labels *Kane, supra,* 34 Cal.App.2d 588, "not relevant" because in that case the duty was transferred from an officer who had been appointed rather than elected. (Dis. opn. of Kennard, J., *post,* p. 1169.) As explained above, this does not distinguish *Kane,* and it likewise provides the dissenting opinion with no valid basis for rejecting Opinion

53-82, 22 Ops.Cal.Atty.Gen., *supra*, 177. Clearly, both *Kane, supra*, and Opinion 53-82, *supra*, are incompatible with the dissenting opinion's novel and overbroad interpretation of *Kelsey, supra*, 34 Cal. 470.

As in *Squires, supra*, 14 Cal. 12, and *Kelsey, supra*, 34 Cal. 470, the focus in *Gunn, supra*, 30 Cal.App. 114, *Kane, supra*, 34 Cal.App.2d 588, and Opinion 53-82, 22 Ops.Cal.Atty.Gen., *supra*, 177, was on the duties sought to be transferred. The controlling factor in each matter was whether *the transferred duty* was one that could be performed only by a person *elected to do so,* or whether it was *properly assignable in the first instance to an appointee.* Because the duties of tax collection and auditing could be performed only by one elected to undertake those duties, any midterm attempt to transfer those duties to one not elected to undertake them was invalid. (*Kelsey, supra*, 34 Cal. 470, 475; *Gunn, supra*, 30 Cal.App. 114, 120-121.) By contrast, the duties of purchasing agent and clerk of the board of supervisors, were not duties that could be performed only by one elected to do so, but were instead duties properly assignable in the first instance to appointed officers. Accordingly, those duties were properly transferred midterm to an appointee. (*Kane, supra*, 34 Cal.App.2d 588, 591; Opn. 53-82, 22 Ops.Cal.Atty.Gen., *supra*, 177, 180-181.)

As the Court of Appeal majority, petitioner, and the dissent herein all acknowledge, the duties of superior court clerk fall into the latter category. No provision of law requires that the person assigned the duties of superior court clerk be elected to perform those duties. It follows that the duties of superior court clerk may be transferred under local rule 22 to another county officer before expiration of petitioner's term.

Petitioner and the dissent herein rely on *Beck v. County of Santa Clara* (1988) 204 Cal.App.3d 789 [251 Cal.Rptr. 444] (*Beck*) for the proposition that *Kelsey, supra*, 34 Cal. 470, "protects . . . the voters' exercise of power at the election," and that "once the electorate has voted for a public officer, having in mind that he will perform a particular bundle of duties, then it would impermissibly negate that exercise of elective choice to take those duties from the official and give them to one not elected to perform them." (*Beck, supra*, 204 Cal.App.3d at p. 794.) This statement is dictum, because, as the *Beck* court conceded, the voters ratified the challenged transfer of duties in that case. (*Id.* at p. 795.) Moreover, *Beck*'s broad dictum mischaracterizes *Kelsey, supra*, which, as noted above, does not bar midterm transfer of duties that are properly assignable in the first instance to an appointee. There is no authority for the broad proposition that duties assigned at election to any given office are unalterably vested in that elected official until the expiration of his or her term.

Although section 69898(d) (quoted *ante*, at pp. 1154-1155) does not, on its face, bar transfer of duty before expiration of an elected county clerk's term, the Court of Appeal majority nevertheless found the statute "ambiguous" and "uncertain" in that regard. It concluded that interpreting the section to apply midterm would violate the electorate's constitutional right to vote, and produce absurd results. Accordingly, the Court of Appeal majority construed (and the dissent herein would likewise construe) section 69898(d) "to mean the superior court may not terminate the county clerk's position as ex officio clerk of the superior court during the county clerk's term of office." Indeed, petitioner would construe the section to permit termination of her ex officio duties only if the transfer were announced before she filed her declaration of candidacy for office—in other words, 113 days before the date of petitioner's election.

As an initial matter, we reject the premise that section 69898 is ambiguous and needs judicial construction. Unlike the cases discussed, *ante*, at pages 1155-1160, in which both authorizing and implementing transfer legislation was enacted *during* the elected officer's term, here, as noted above, section 69898(d) had, for over 17 years *before* petitioner's reelection, expressly authorized transfer of superior court clerk duties from the county clerk to an appointed court officer. As Justice Martin, dissenting below, observed, "the Legislature, contrary to the majority's surmise, did consider the question before us and so framed section 69898[(d)] as to provide that the statute's provisions could be exercised by any superior court in this state at any time from and after the commencement by any county clerk of a new term beginning after January 1, 1977. *Each county clerk would have run for and, if successful, taken office with actual or constructive notice of the provisions of section 69898 and its possible effect upon them during their term of office, as would each voter who, like county clerks and all the rest of us, are presumed to know the law.*" (Italics added.)

In any event, for the reasons set out, *ante*, at pages 1155-1160, the Court of Appeal majority's constitutional analysis (and that of the dissenting opinion herein) is incorrect. No infringement of the electorate's franchise occurred here (and, contrary to the dissent, *post*, at pages 1165-1166, section 69898 does not implicate the electorate's right to vote) because, quite simply, the voters have no right to elect the official who will perform the duties of clerk of the superior court. As noted above, California Constitution, article VI, section 4, gives to the Legislature authority to determine who will carry out the functions of court clerk. No provision of law requires the official who performs those duties to be elected. The electorate's right to vote for county clerk does not negate the Legislature's power to transfer from the county clerk duties that may be assigned to appointed officers in the first instance.

Nor will section 69898(d) lead to absurd results unless given a more restrictive interpretation. The Court of Appeal majority, noting that under the county charter, petitioner's salary cannot be lowered to reflect the reduction of her duties, surmised petitioner's retention of full salary would produce waste that could not have been contemplated by the Legislature. We do not reach the same conclusion. First, the Legislature might have assumed that not all counties' governing provisions would preclude reduction of the county clerk's salary under such circumstances. Moreover, the Legislature could assume that when reduction of salary is foreclosed, a county might be able to shift replacement responsibilities to the county clerk, commensurate with his or her salary. Indeed, at oral argument, counsel for respondent asserted the county will do just that. Finally, as noted above, the Legislature could properly assume that any short-term financial loss to the county would be justified by increased efficiency and enhanced opportunity for securing funding from the Trial Court Budget Commission. (See *ante,* at p. 1155.) We find nothing to support the Court of Appeal majority's conclusion that section 69898(d) must be construed to preclude midterm transfer of superior court clerk duties from the county clerk to an appointed court officer.

### III.

Under section 26529, county counsel must defend or prosecute all civil actions in which the county or any of its officers is a party "in his or her official capacity." County counsel declined to prosecute petitioner's suit because of a conflict: he had earlier advised the board of supervisors that the challenged transfer of duties would be legal. The Court of Appeal unanimously held that despite the outcome of the suit, petitioner was entitled to attorney fees under section 26529.

Respondent asserts this was error. It would appear, however, that only the County of Fresno, and not respondent court, has standing to raise this issue. The county was a party below but did not petition for review, and is not before us in this proceeding. In any event, were the issue properly before us, we would not disturb this aspect of the judgment. When petitioner was elected county clerk, she was obligated to act as ex officio clerk of the superior court. In seeking to retain those duties, she sued in her official capacity, and is entitled to reimbursement under section 26529.

We reverse the judgment of the Court of Appeal, and deny petitioner's request for a writ of mandate. Petitioner shall be allowed to recover reasonable attorney fees, and her costs of suit.

Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

**MOSK, J., Concurring.**—I agree with the majority that the transfer of superior court related duties from petitioner, the elected county clerk, to a court executive officer was within the power of the superior court. Government Code section 69898, subdivision (d), so permits; the statute is clear and unambiguous and is therefore not in need of judicial construction as petitioner contends. Nothing in the language of the provision would appear to prohibit a transfer of powers at any time, even during the elected officer's term. I also agree with the majority that the transfer does not violate the electors' constitutional right to vote. They did so, and petitioner remains the county clerk. There was no "right" to elect a county clerk who would perform the precise duties of a clerk of the superior court.

At the same time, I question whether such precipitate action was justified as a matter of public policy. Petitioner was overwhelmingly reelected to a second four-year term as Fresno County Clerk. Her performance was thus approved by the voters. Yet less than three weeks before her second term began, her position was stripped of much of its duties. If the superior court determined after the election of the county clerk that a reallocation of duties was desirable, it could have made the transfer prospective only, i.e., commencing at the beginning of the next term of the county clerk. In that way, any potential appearance of the transfer as being punitive would be negated and the positive aspects, in terms of increased efficiency or funding "incentives and rewards" from the Trial Court Budget Commission, would at most be deferred for a few short years.

Having offered the foregoing public policy caveat, however, I cannot deny the authority of the superior court to act as it did, regardless of appearance and consequences. Thus I concur with the majority.

**KENNARD, J., Dissenting.**—Government Code section 69898, subdivision (d) authorizes the superior court of a county to transfer duties from an elected county clerk like the petitioner in this case to an administrator appointed by the superior court, but says nothing about the permissible timing of such a transfer. From this silence, the majority concludes that the Legislature intended to empower the superior court to implement a transfer of duties from the county clerk *at any time*. I cannot agree that the Legislature intended this interpretation of section 69898, in light of the harm it causes to the people's right to vote.

The right to vote stands at the heart of our democratic institutions. " ' "No right is more precious in a free country than that of having a voice in the election . . . . Other rights, even the most basic, are illusory if the right to vote is undermined." ' " (*Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 714-715 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915].) If qualified

voters are denied the opportunity to cast a ballot, no one would question that their right to vote is infringed. That right is also impaired when, as occurred here, after the election the voters' ballots are rendered largely meaningless because the elected official's major duties are taken away before expiration of the term of office and given to one not elected to perform them. Nonetheless, in this case the majority holds that the Fresno County Superior Court may still the voice of the electorate by divesting petitioner of the major duties that the electorate had chosen her to perform. Because, for the reasons stated below, I do not share the majority's view that the Legislature intended to grant the judicial branch the power to perform this bait-and-switch on the voters, I would affirm the judgment of the Court of Appeal that the Fresno County Superior Court's transfer of duties from the county clerk cannot take effect until the end of petitioner's term.

I

The Fresno County Clerk's Office was the subject of inquiry and criticism by grand juries, courts, lawyers, the press, and the public from approximately 1974 to 1990. The criticism focused on allegations that the then incumbent county clerk was failing to perform the duties of the office adequately, including those affecting the superior court. As a consequence, petitioner Susan B. Anderson and four others ran for the office of county clerk in 1990. Petitioner, an attorney, campaigned on a promise to reform the office. Petitioner received 49.3 percent of the vote in the primary election and 84 percent in the ensuing runoff. In the same election in which she was elected, the voters rejected a ballot measure that would have made the county clerk's office appointive rather than elective.

During her first term, from 1991 to 1995, petitioner did reform the office as she had promised the electorate. Petitioner was reelected county clerk on June 4, 1994, for a four-year term beginning on January 2, 1995. On October 4, 1994, after petitioner's election but before the start of her second term, the judges of the Fresno County Superior Court adopted local rule 22 to take effect December 30, 1994. Rule 22, promulgated under the authority of Government Code section 69898, appoints the superior court's executive officer the clerk of the superior court; it transfer two-thirds of the employees and more than one-half of the duties of the county clerk from petitioner's office to the superior court. According to the presiding judge's explanation to the Fresno County Board of Supervisors, rule 22 was adopted to promote court efficiency and to avoid the loss of potential funding by the state Trial Court Budget Commission. (Gov. Code, § 68502.5.)

Petitioner brought this action as an original proceeding in the Court of Appeal. The court stayed the implementation of rule 22 and subsequently

issued a writ of mandate, holding that rule 22 could not be implemented during petitioner's term of office because to do so would impinge upon the electorate's right to vote.

## II

This case presents the question of whether Government Code section 69898, subdivision (d) (hereafter section 69898(d)) permits the transfer of superior court clerk duties from the county clerk before the expiration of the term for which the county clerk has been elected. By virtue of our state Constitution, the county clerk is ex officio the clerk of the superior court of that county. (Cal. Const., art. VI, § 4.) Section 69898(d) authorizes the superior court of a county, by promulgating a local court rule, to transfer duties related to the courts from the county clerk to an administrator appointed by the court.[1] The statute is silent as to the timing of when such a transfer may take effect.

In *Zumwalt* v. *Superior Court* (1989) 49 Cal.3d 167, 180 [260 Cal.Rptr. 545, 776 P.2d 247] this court held that court-related duties could constitutionally be transferred from a county clerk to a court administrator. We had no occasion in that case, however, to consider whether section 69898(d) or the California Constitution imposed any restrictions on the timing of such a transfer.

The question of whether section 69898(d) permits the superior court to transfer duties from the county clerk before the end of the county clerk's term is one of legislative intent. The majority asserts that because section 69898(d) is silent on the timing of the transfer, it therefore unambiguously authorizes the superior court to effect the transfer at any time. I disagree. Because the statute does not address the question of timing, the ordinary meaning of its language does not resolve one way or the other whether the superior court is authorized to take away the bulk of a county clerk's duties after the clerk's election and before the end of the term for which the clerk was elected. On its face, the statute is open to either interpretation.

When a statute delegates a power but is silent as to the manner in which the power may be exercised, it may be appropriate to infer from the statute's

---

[1]Section 69898(d) provides in full: "Notwithstanding any other provision of law, a superior court having an executive or administrative officer may, by local rule, specify which of the powers, duties and responsibilities required or permitted to be exercised or performed by the county clerk in connection with judicial actions, proceedings and records shall be exercised or performed by the executive or administrative officer. The county clerk shall be relieved of any obligation imposed on him [or her] by law with respect to these specified powers, duties and responsibilities, to the extent the local rule imposes on the executive or administrative officer the same powers, duties and responsibilities."

silence that the Legislature intended no restriction on the exercise of the power the statute delegates. Such an inference is certainly not automatic, however. Our duty to construe statutes so as to avoid constitutional questions may lead to the conclusion that a statute delegating a power contains implicit limitations on the exercise of that power: " '[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' " (*People* v. *Davenport* (1985) 41 Cal.3d 247, 264 [221 Cal.Rptr. 794, 710 P.2d 861], quoting *United States* ex rel. *Atty. Gen.* v. *Delaware & H. Co.* (1909) 213 U.S. 366, 408 [53 L.Ed. 836, 849, 29 S.Ct. 527].) In addition, the subject matter of the statute and the context in which it operates may show that it is more reasonable to conclude that the Legislature implicitly intended some limits on the exercise of the power delegated by the statute.

Thus, in deciding the issue of statutory interpretation presented here— whether section 69898(d) authorizes a superior court to transfer duties from a county clerk *at any time*—it is appropriate to examine the impact on the constitutional right to vote if superior courts possessed that transfer power. In my view, the serious interference with the right to vote outlined below that would result from granting a superior court the power to remove, at any time, duties from the county clerk, makes it improbable that the Legislature intended by the statute's silence to grant the superior court that power. Accordingly, adhering to our duty to construe statutes to avoid constitutional questions, I conclude that section 69898(d) does not authorize a superior court to transfer duties from the county clerk between the time of the clerk's election and the end of the term to which the clerk was elected. Because I decide this issue as a matter of statutory construction, it is unnecessary for me to decide, as the majority does, whether it would be constitutional for the Legislature to enact such a statute.

I now turn to an examination of the effect of section 69898(d) on the constitutional right to vote, in order to illuminate the probable intent of the Legislature and the proper construction of section 69898(d). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.' " (*Burdick* v. *Takushi* (1992) 504 U.S. 428, 433 [119 L.Ed.2d 245, 252, 112 S.Ct. 2059].) Indeed, the right to vote "may be the most fundamental of all." (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].) This court has observed: " '[A] fundamental goal of a democratic society is to attain the free and pure expression of the voters' choice of candidates. To that end, our state and federal Constitutions mandate that the government must, if possible, avoid any feature that might adulterate or, indeed, frustrate, that free and pure choice . . . .' " (*Canaan* v. *Abdelnour, supra*, 40

Cal.3d at p. 716, quoting *Gould* v. *Grubb* (1975) 14 Cal.3d 661, 677 [122 Cal.Rptr. 377, 536 P.2d 1337].) Undoubtedly, the Legislature is as fully aware as we are of "the need to protect the fundamental right to vote." (*Canaan* v. *Abdelnour, supra,* 40 Cal.3d at p. 722.)

In particular, this court has recognized that taking away the major duties of an elected officeholder before the expiration of the term of office can infringe the right to vote. We so concluded in *People* v. *Kelsey* (1868) 34 Cal. 470 (hereafter *Kelsey*). In that case, a county sheriff at the time of his election was assigned by statute the duties of tax collector. (*Id.* at pp. 472-473.) Before the end of his term, however, the Legislature transferred those duties to the county treasurer. (*Ibid.*) This court held that the transfer was unconstitutional as applied to the sheriff's current term of office and could not take effect until the sheriff's term had expired. (*Id.* at pp. 475-476.) We stated that the Legislature's power to transfer those duties from the sheriff to the treasurer did not imply that the Legislature had the power to make that transfer effective before the end of the term of a sheriff "elected in contemplation of performing the duties of Tax Collector." (*Id.* at p. 476.)

Forty-eight years later, a similar issue arose in *People* v. *Gunn* (1916) 30 Cal.App. 114 [157 P. 619]. In that case, Napa County had a single elective office that combined the duties and offices of auditor and recorder. The county board of supervisors sought to remove the duties of auditor from the office and transfer them to a new position before the end of the term of the person who had been elected to fill the combined auditor/recorder office. (*Id.* at pp. 114-116.) The Court of Appeal, applying our decision in *Kelsey, supra,* 34 Cal. 470, held that the duties could not be transferred before the end of the officeholder's term. In so holding, it stated: "It is safer and, we think, better that the principle enunciated in the Kelsey case, *supra,* should be followed, and the choice of the electors remain undisturbed until . . . the next election . . . ." (30 Cal.App. at p. 121.)

The majority, however, reads *Kelsey, supra,* 34 Cal. 470, and *People* v. *Gunn, supra,* 30 Cal.App. 114, narrowly as limiting the transfer of duties from an elected officer only if the transferred duty was one that could be performed exclusively by a person elected to do so. (Maj. opn., *ante,* at p. 1160.) In my view, however, *Kelsey* and *Gunn* are not so narrowly confined but rest on the broader principle that "once the electorate has voted for a public officer, having in mind that he [or she] will perform a particular bundle of duties, then it would impermissibly negate that exercise of elective choice to take those duties from the official and give them to one not elected to perform them." (*Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789, 794 [251 Cal.Rptr. 444].)

The principle on which *Kelsey, supra,* 34 Cal. 470, turned was not merely that the officeholder's duties were transferred to someone not elected to perform them, but that the duties were taken away from someone whom the electorate had chosen to perform them, thereby nullifying the voters' choice. This court made this clear when, shortly after *Kelsey,* it decided *Mills* v. *Sargent* (1868) 36 Cal. 379. The parties in *Mills* were the successors in office to the parties in *Kelsey;* the new sheriff maintained that because the statute had sought to make the transfer of the duties of tax collector from the old sheriff to the treasurer effective before the end of the old sheriff's term, it was unconstitutional not only as applied to the old sheriff but for all purposes. (*Id.* at p. 382.) In the course of rejecting that contention, this court emphasized that *Kelsey* had been grounded on the fact that, in transferring the duties, the choice of the electorate had been negated, and that this ground had disappeared once new elections were held in which the voters were informed that the person they elected as treasurer, and not the one they elected as sheriff, would serve as tax collector: "[W]e held [in *Kelsey*], that, under the Constitution which required a Tax Collector to be elected, as such, by the people, it was incompetent for the Legislature, after a Tax Collector had been elected for a term by the people, *to transfer the office from the party so elected with a view to that office,* to another party who was not elected with any view to a discharge of so important duties. . . . [¶] . . . At the next general election the Board of Supervisors, in their proclamation, made in pursuance of the statute, stated that a Treasurer would be elected, who would be *ex officio* Tax Collector; and the people, under the law, elected a Treasurer with the express understanding that he would act in the double capacity of Treasurer and Tax Collector . . . ." (*Id.* at pp. 382-383, italics added.)

In constructing its distinction between nontransferable elective duties and transferable appointive duties, the majority also relies on *Attorney-General* v. *Squires* (1859) 14 Cal. 12. In that case, a sheriff who was also tax collector challenged a statute that divested him during his term of office of the duty of collecting a license fee from foreign miners; the court held that the transfer was permissible because it did not take away the "necessary duties of the Tax Collector." (*Id.* at p. 18.) As I read *Squires,* it stands only for the unexceptionable and pragmatic conclusion that the electorate's right to vote is not substantially infringed when the duty that is transferred during the term of office is only peripheral to that office. By contrast, this case involves the transfer of the majority of the county clerk's duties; thus, *Squires* offers no support to the majority's position.

The final case that the majority relies on in drawing its distinction between duties assignable to elective and appointive officers, *Kelly* v. *Kane*

(1939) 34 Cal.App.2d 588 [94 P.2d 384], is not relevant. In that case, duties were transferred from one appointive office to another appointive office. (*Id.* at pp. 589, 591.) Because there was no transfer of duties from an elected officer, no question arose in that case as to the electorate's right to vote or the restrictions on transferring duties from an elected officer.

The majority also relies on a 1953 opinion of the Attorney General as support for its distinction between nontransferable elective duties and transferable appointive duties. (22 Ops.Cal.Atty.Gen. 177 (1953).) In that opinion, the Attorney General, by an analysis similar to the majority's in this case (and one that I find similarly defective), concluded that the duties of clerk of a county board of supervisors could be transferred from the elected county clerk to an appointed official. (*Id.* at pp. 179-181.) In particular, the Attorney General, like the majority here, relied on *Kelly* v. *Kane, supra*, 34 Cal.App.2d 588, to distinguish *Kelsey* and *Gunn*; as I have previously stated, this reliance is misplaced because in *Kane* the duties were transferred from one appointed official to another appointed official.

There is another consideration that weighs against the majority's construction of section 69898(d). As the majority notes (maj. opn., *ante*, at p. 1155), the statute's purpose is to enhance the efficiency of court operations by permitting a superior court to transfer duties where appropriate from the county clerk to a court administrator. As I observed earlier, the statute is silent on the timing of such a transfer. The majority concludes from this silence that a superior court may cause the transfer to occur at any time. Henceforth, however, what is to prevent the superior court judges in a particular county from awaiting the outcome of a county clerk election and then taking away important duties from the clerk out of antipathy to the person elected clerk or to the clerk's policies with respect to court-related duties? It is quite dubious that, in enacting section 69898(d), the Legislature intended any transfer of duties from a county clerk to be grounded on the identity or policies of the person elected clerk, rather than on the promotion of judicial efficiency.

In sum, I presume that in enacting section 69898(d) the Legislature was mindful of the respect due to the people's right to vote; of the " 'mandate that the government must, if possible, avoid any feature that might adulterate, or, indeed, frustrate' " (*Canaan* v. *Abdelnour, supra*, 40 Cal.3d at p. 716) the choices expressed by the electorate; of existing legal precedent restricting the timing of transfers of duties from elected officeholders during their terms; and of the potential for thwarting the will of the people inherent in delegating to the judicial branch the power to take away duties from an officeholder elected to perform those duties. I conclude therefore that the

Legislature intended that section 69898(d) be construed in conformity with, and not contrary to, these fundamental structural principles of our government and with our precedent in *Kelsey, supra*, 34 Cal. 470. I certainly would not impute the opposite purpose to the Legislature, as the majority does, without clear and firm evidence that it intended to silently delegate to the superior court the awesome power of turning a vote of the people into a hollow act. Mere silence on a matter of this gravity is not enough to support the conclusion that the Legislature intended to grant this power.

For these reasons, I would construe section 69898(d) so as not to impinge on the people's right to vote by depriving the county clerk of the major duties of the office to which the people have elected the clerk. Accordingly, I would hold, as the Court of Appeal did, that this statute grants the superior court the power to transfer duties from the county clerk subject to the implied limitation that such a transfer be made effective only at the end of the term to which the clerk has been elected.[2]

---

[2]I concur in the majority's holding (maj. opn., *ante*, at p. 1162) that petitioner is entitled to recover her attorney fees and costs of suit.