Filed 6/5/23  Williams v. City and County of San Francisco CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HOPE WILLIAMS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant and Respondent. | A165040 <br><br> (San Francisco Superior Court No. CGC-20-587008) |

Plaintiffs Hope Williams, Nathan Sheard, and Nestor Reyes appeal after the trial court granted summary judgment in favor of defendant City and County of San Francisco (City) on plaintiffs' claim that the San Francisco Police Department (SFPD) violated a City ordinance by using privately owned surveillance technology (specifically, surveillance cameras) without obtaining approval from the City's Board of Supervisors (Board).  The City contends this appeal is moot because plaintiffs sought only injunctive and declaratory relief, and a more recently enacted ordinance approves the use of the challenged surveillance technology, so there is no ongoing dispute as to whether the SFPD's use of it is proper.  The City also argues the trial court's decision was correct on the merits.

1

We conclude that the appeal is moot and that there is no exception to mootness that would justify our resolving the question whether the SFPD's past use of the technology was proper. We will therefore dismiss this appeal.[1]

## I. BACKGROUND

### A. *The SFPD's Access to the Union Square Business Improvement District's Camera Network*

In its summary judgment order, the trial court summarized the background of the SFPD's use of the privately owned camera network at issue here. "During San Francisco's Pride celebration in June 2019, the Union Square Business Improvement District [(USBID)]—a non-City entity—gave City police access to USBID's outdoor camera network. [Citation.] In July 2019, the at-issue ordinance—[codified at San Francisco] Administrative Code [Chapter] 19B—took effect. [Citation.] In February 2020, the USBID again offered the police access to its cameras—for football's Super Bowl. [Citation.] In May and June 2020, there were protests in San Francisco of George Floyd's murder. With access to USBID's camera network on a laptop computer, a police officer looked several times 'to ensure there were no crowds forming in Union Square' and found 'no activity.' [Citation.] Again, for July 4th 2020, the USBID offered police access to its camera network."

### B. *The Board's 2019 Ordinance Governing the Acquisition of Surveillance Technology*

In 2019, the Board adopted San Francisco Ordinance No. 107-19, which added Chapter 19B (entitled "Acquisition of Surveillance Technology") to the

---

[1] A group of organizations including Asian Americans Advancing Justice-Asian Law Caucus (ALC) and Black Movement-Law Project (BMLP) filed an application for leave to file an amicus brief in support of plaintiffs. We deny the application because the proposed amicus brief does not address the mootness issue that we find dispositive.

City's Administrative Code (Chapter 19B). (S.F. Admin. Code, Ch. 19B; S.F. Ord. No. 107-19, § 2, adding Ch. 19B to S.F. Admin. Code.) The ordinance was approved on June 14, 2019, and took effect on July 15, 2019. (S.F. Admin. Code, Ch. 19B.)

Chapter 19B limits the ability of City departments to use surveillance technology,[2] including requiring that a department obtain "[Board] approval by ordinance" of a "Surveillance Technology Policy" for each surveillance technology. (S.F. Admin. Code,[3] § 19B.2, subd. (a).) Such approval generally is required prior to a department's acquiring, using, borrowing, or sharing a surveillance technology. (§ 19B.2, subd. (a)(2)-(4).) Chapter 19B outlines the procedure to be used by a department seeking Board approval of a surveillance technology, a process that involves development of a proposed policy for the technology by a City body, the Committee on Information Technology (COIT). (§§ 19B.1, 19B.2, subds. (a)-(b), 19B.3, 19B.4.)

Although generally requiring prior Board approval for use of surveillance technology, Chapter 19B allows a City department to continue using an existing surveillance technology until the Board enacts an ordinance addressing the department's policy for that technology. (§ 19B.5, subd. (d).) Specifically, section 19B.5, subdivision (d) (section 19B.5(d)) states: "Each

---

[2] Chapter 19B's definition of " 'Surveillance Technology' " states in part that the term means "any software, electronic device, system utilizing an electronic device, or similar device used, designed, or primarily intended to collect, retain, process, or share audio, electronic, visual, location, thermal, biometric, olfactory or similar information specifically associated with, or capable of being associated with, any individual or group." (S.F. Admin. Code, § 19B.1.) The definition also lists a number of technologies that fall within its reach, including "surveillance cameras." (*Ibid.*)

[3] Undesignated section references are to the San Francisco Administrative Code.

Department possessing or using Surveillance Technology before the effective date of this Chapter 19B may continue its use of the Surveillance Technology and the sharing of data from the Surveillance Technology until such time as the Board enacts an ordinance regarding the Department's Surveillance Technology Policy and such ordinance becomes effective under Charter Section 2.105."[4]

## C. *Plaintiffs' Lawsuit and Appeal*

In October 2020, plaintiffs filed the present action against the City, alleging the SFPD violated section 19B.2, subdivision (a)(2)-(4) by using the USBID's surveillance camera network in May and June 2020 without obtaining prior Board approval. (See § 19B.8, subd. (b) ["any person affected" by an alleged violation of Chapter 19B "may institute proceedings for injunctive relief, declaratory relief, or writ of mandate to remedy the violation"; the action is to be brought against the City].)[5] Plaintiffs sought a declaration that the City violated Chapter 19B and an order enjoining the City from acquiring, borrowing, or using any private camera network without prior Board approval. Plaintiffs also sought attorney fees.

---

[4] Both parties refer to section 19B.5(d) as providing a "grace period" during which a City department may continue to use an existing surveillance technology pending the enactment of a Board ordinance addressing the use of that technology, although as the trial court noted, the ordinance itself does not use the term " 'grace period' " (or the related term used by the City that an existing technology may be " 'grandfather[ed]' " in). For convenience, we will sometimes refer to the provision as a "grace period."

[5] As to standing, plaintiffs allege that, as activists involved in protest activities, they are "affected" by the SFPD's use (and possible future use) of surveillance technology. The City agreed in the trial court that, under the broad "affected" standard, plaintiffs have standing to bring the present action.

4

The parties filed cross-motions for summary judgment in September 2021, and the trial court heard argument on January 21, 2022, and February 1, 2022. The court issued a written order on February 9, 2022, granting the City's motion and denying plaintiffs' motion. The court ruled the SFPD had not violated Chapter 19B. The court noted that, under section 19B.2, a City department generally must obtain Board approval by enactment of a separate ordinance before acquiring or using surveillance technology. No such ordinance had been enacted governing use of the USBID's surveillance camera system.

The court found, however, that, because of the SFPD's prior use of the USBID's camera system (including at the Pride celebration in June 2019, before Chapter 19B went into effect), the department's continued use of the system was permissible under section 19B.5(d). As noted, that provision specifies that a department "possessing or using" a surveillance technology before the effective date of Chapter 19B may continue to use the technology until the Board enacts an ordinance governing the technology. (§ 19B.5(d).) The court rejected plaintiffs' arguments that the SFPD's use of the camera network had not been extensive enough to qualify as "possessing or using" under section 19B.5(d), or that section 19B.5(d) was inapplicable for other reasons.

The court entered judgment in the City's favor on March 10, 2022. Plaintiffs filed a notice of appeal on March 25, 2022, initiating the present appeal. In their appellate briefs, plaintiffs argue the trial court misinterpreted section 19B.5(d) and erroneously concluded that provision authorized the SFPD's use of the USBID's camera system in May and June 2020.

5

**D. *Ordinance No. 205-22***

On September 27, 2022, the Board adopted an ordinance—San Francisco Ordinance No. 205-22 (Ordinance No. 205-22)—that approves (with specified modifications) the SFPD's Surveillance Technology Policy for use of surveillance cameras owned and operated by non-City entities. (Ord. No. 205-22, §§ 3, 2, subd. (a); *id.*, "City and County of San Francisco Tails Ordinance," pp. 1-2.)[6] Ordinance No. 205-22 was signed by the Mayor on October 6, 2022, and went into effect 30 days later. (*Id.*, § 5; *id.*, "City and County of San Francisco Tails Ordinance," pp. 1-2.) The ordinance describes the process that led to its adoption, during which COIT held public hearings and developed a recommended policy for the Board's consideration. (*Id.*, § 2.)

Ordinance No. 205-22 states that, "[u]nless reauthorized by ordinance," the approved SFPD policy, as modified by the Board, "shall expire fifteen months after the effective date" of Ordinance No. 205-22, i.e., in February 2024. (Ord. No. 205-22, § 4.)

## II. DISCUSSION

The City argues the enactment of Ordinance No. 205-22 approving the SFPD's policy governing use of non-City cameras moots the present appeal. We agree. To now resolve the central issue litigated in the trial court— whether the grace period in section 19B.5(d) allowed use of non-City cameras during the time *before* there was an applicable ordinance governing that technology—would be an idle exercise that could not provide any effective relief to plaintiffs.

---

[6] We granted the City's motion that we take judicial notice of Ordinance No. 205-22.

6

**A.** *Legal Standard*

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.)

"Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute. [Citation.] As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.' " (*In re D.P., supra,* 14 Cal.5th at p. 282.)

**B.** *The Appeal is Moot and No Basis Exists to Exercise Our Discretion to Reach the Merits of The Dispute*

Applying the above standard for mootness, it would not be possible for this court to grant effective relief to plaintiffs if we were to decide this appeal in their favor. Now that an ordinance approving the SFPD's policy governing use of non-City surveillance cameras has gone into effect, the harm identified in plaintiffs' complaint—that the SFPD used the USBID's cameras *in the absence* of an approving ordinance—is not ongoing. And because plaintiffs seek only injunctive and declaratory relief, no action this court could take in resolving this appeal would redress or rectify any harm stemming from the

7

SFPD's allegedly improper past use of the technology. More specifically, as the City points out, determining whether the SFPD's use of non-City cameras in 2020 fell within section 19B.5(d)'s grace period, a period that has ended due to the enactment of Ordinance No. 205-22, would provide no effective relief to plaintiffs. A pronouncement by this court on that issue would be nothing more than an advisory opinion.

Plaintiffs argue in their reply brief that this court should resolve the present appeal nonetheless, either because it is not moot or because circumstances exist that justify this court's reaching the merits of the dispute even though it is moot. Plaintiffs first contend that, because Ordinance No. 205-22 states that the SFPD's policy governing use of non-City surveillance cameras will remain in effect only until February 2024, the appeal is not moot. Plaintiffs also claim that, even if their request for injunctive relief is moot, this court can still provide effective declaratory relief as to the meaning of section 19B.5(d). Finally, plaintiffs assert that, even if this case is moot as to them, this court should determine the scope of section 19B.5(d) because that is a question of broad public interest that is likely to recur.

We disagree with each of plaintiffs' arguments and we will therefore dismiss this appeal as moot.

### 1. The Sunset Provision in Ordinance No. 205-22

As noted, Ordinance No. 205-22 states that, "[u]nless reauthorized by ordinance," the SFPD's policy governing use of non-City cameras "shall expire fifteen months after the effective date" of Ordinance No. 205-22. (Ord. No. 205-22, § 4.) Plaintiffs argue that, if the Board does not reauthorize the policy, any SFPD use of the USBID's cameras after February 2024 would violate Chapter 19B's prohibition on the use of surveillance technology without Board approval (found in section 19B.2), so an injunction prohibiting

8

such use would still be appropriate, independent of the question whether the grace period in section 19B.5(d) applied in 2020. Accordingly, plaintiffs assert, their request for an injunction is "live." We disagree.

There is no live controversy here, because the basis for plaintiffs' request for injunctive relief—the SFPD's alleged unauthorized use of non-City cameras—no longer exists. Currently, it would not be a violation of section 19B.2 for the SFPD to use the USBID's cameras, as long as the SFPD follows the guidelines in its Board-approved policy governing use of non-City cameras. (§ 19B.2; Ord. No. 205-22, § 3.) There is no ongoing illegal conduct to enjoin. The circumstance that the use of non-City cameras could become unlawful at some point (e.g., if the SFPD's policy expires without being reauthorized) does not persuade us that an injunction should issue requiring generally that the City comply with whatever legal regime is in place in the future. The parties' dispute as to whether the SFPD's past use of the cameras was improper and needed to be enjoined is moot.

Plaintiffs contend a defendant's cessation of allegedly illegal conduct does not necessarily make a case moot, because the defendant could still resume the conduct, but the cases plaintiffs cite on this point are inapposite.

When a private defendant temporarily ceases conduct that allegedly violates the law, or when a governmental defendant modifies its policies in a way that only temporarily addresses alleged constitutional or other violations, courts have held in some circumstances that a dispute over the validity of the defendant's conduct remained live. (E.g., *Bullock v. Carter* (1972) 405 U.S. 134, 136, 141-142, fn. 17 [state statute enacted to protect election process during state's appeal of order finding candidate filing-fee requirement unconstitutional did not moot the appeal]; *Gould v. Grubb* (1975) 14 Cal.3d 661, 666, fn. 5 [city's enactment of ordinance to comply with

9

trial court ruling on election procedures was only to "insulate" interim elections and did not constitute an abandonment of city's position on appeal that its previous practice was constitutional; citing *Bullock*]; *Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 316 ["Where, as here, a company has not taken action to bind itself legally to a violation-free future, there may be reason to doubt the bona fides of its newly established law-abiding policy."].)

The situation here is different. The SFPD is alleged to have violated a City ordinance in the past by using non-City cameras without Board approval, but the Board has now granted approval. The SFPD's conduct remains the same, but the legal rules governing it have been changed by the body with authority to set those rules. The possibility the same SFPD conduct could in the future violate a different and unknown set of legal rules does not create a live controversy subject to meaningful judicial resolution.

In urging that a justiciable dispute remains, plaintiffs argue the City "has not abandoned its defense of the SFPD's unapproved use of the non-city cameras." But the City does not contend the SFPD has a general right to use non-City cameras without Board approval. Instead, the City presents the more limited argument that, during the period before the Board enacted an ordinance addressing the SFPD's use of non-City cameras, such use was permissible under the grace period afforded by section 19B.5(d). That grace period has now ended with the enactment of Ordinance No. 205-22, and plaintiffs do not suggest the grace period will spring back into existence if the SFPD's policy governing use of non-City cameras is not reauthorized by the Board. (§ 19B.5(d).) We decline to hold that mootness in these circumstances hinges on a requirement that the City renounce its view as to the scope of the now-expired grace period.

## 2. Declaratory Relief

Plaintiffs next argue that, even if their request for injunctive relief is moot, this court should still resolve their request for declaratory relief as to the applicability of the grace period in section 19B.5(d), an issue they contend could arise in future disputes with the SFPD about other surveillance technologies. (See *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 ["general rule governing mootness" is subject to exception where "there remain material questions for the court's determination," an exception that can apply to claims for declaratory relief].)

We find no basis for resolving the declaratory relief claim here. No record has been developed in the present case as to the SFPD's prior possession or use of other technologies such as to (arguably) trigger the section 19B.5(d) grace period allowing their continued use pending Board approval. In our view, the possibility of a future dispute about such a question (likely involving different factual and legal issues than are presented in this case) does not provide a basis for this court to determine whether the Board's use of the USBID's cameras in 2020 fell within the terms of section 19B.5(d).

## 3. Likelihood of Recurrence

Finally, plaintiffs contend that, even if this case is moot as to them, this court should address their arguments as to the scope of the section 19B.5(d) grace period because that is a question of broad public interest that is likely to recur in disputes between other plaintiffs and other City departments. We disagree. First, as noted, the ordinance requiring Board approval of surveillance technologies went into effect in 2019, and it does not seem self-evident that there will continue to be frequent disputes about whether a department's pre-2019 use of surveillance technologies triggered the section 19B.5(d) grace period. But in any event, for the reasons we have

discussed, the possibility of a future dispute about a different technology, involving distinct facts and issues, does not provide a basis to resolve the present appeal.

## III. DISPOSITION

The appeal is dismissed.   City shall recover its costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
WHITMAN, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.